### SLOAN & SON. v. COURTENAY.

1. PLEADINGS—EQUITABLE ISSUES—ANSWER.—A simple denial that defendant did not enter into the contract set up by plaintiffs, without claim that it be reformed or rescinded, raises no equitable issues.

2. EVIDENCE—PRACTICE—APPEAL—DISCRETION—CIRCUIT JUDGE.— As to irrelevancy of testimony, large discretion is lodged in Circuit Judge, and it must be a very clear case of error to warrant interference on appeal.

3. IBID.—WITNESS—TELEGRAM.—A party may refresh his memory as to what he was instructed to put in a telegram by the telegram itself, although under the circumstances it would be incompetent.

4. IBID.—DECLARATIONS—ESTOPPEL—TELEGRAMS.—A statement in form of a dictated telegram, acknowledging a liability now denied, is competent against the party as a declaration against interest, and as estoppel.

5. EXCEPTION too general to require consideration.

6. PRACTICE—REPLY—CONTRADICTION.—A WITNESS may be called in reply to reiterate statements made by him for plaintiff, which have been contradicted by defense.

7. APPEAL—CIRCUIT JUDGE.—This Court will not consider the reasons given by a Circuit Judge for his rulings.

8. NONSUIT—WRITTEN INSTRUMENT—PAROL.—CONTRACT sued on rested partly in written instrument and partly in parol, and there being some evidence to show who were liable and for what amount, nonsuit was properly refused.

9. CONTRACT—CONSIDERATION.—There was sufficient evidence of consideration to support the contract set up.

10. CHARGE—WRITTEN INSTRUMENT—PAROL.—Jury were not left to construe the written contract, but were instructed to find from all the testimony, written and parol, if defendant were liable.

11. CONTRACT—JOINT CONTRACTORS—REMEDIES.—Where two or more persons contract jointly as parties of one part, a mistake on the part of one of the persons will not relieve any of the persons of his part of his liability under the contract.

12. IBID.—WRITTEN INSTRUMENT—REMEDIES.—Terms of a written contract cannot be varied, explained or contradicted, except in proceeding for rescission or reformation.

13. ESTOPPEL.—If one party changes his position to his disadvantage by reason of representations of another, or of his failure to read a writing before signing it, the latter will be estopped from taking advantage of such change.

14. APPEAL—CASE—EXCEPTIONS.—REQUESTS to charge not shown in any part of "Case," except exceptions to have been before Circuit Judge, will not be considered on appeal.

15. CONTRACT—PRACTICE—JOINT AND SEVERAL CONTRACTORS—REMEDIES.—If each of several persons contract to pay a specified amount of a gross sum, judgment may be obtained against one alone for his share.

16. VERDICT—JURIES AND JURY TRIALS.—A DEFENDANT cannot have a verdict *non obstante veredicto.*

Before KLUGH, J., York, spring term, 1898.   Affirmed.

Action on contract by J. B. E. Sloan & Son against Francis J. Pelzer, Wm. A. Courtenay, John R. London, Thomas C. Robertson and Allen Jones.   Judgment was only asked against defendant, Courtenay, who filed the following answer:

1. That he denies that, under the decree mentioned in the second paragraph of the complaint, the plaintiffs had the lien therein alleged.   2. That he did sign for himself and F. J. Pelzer, a written paper, on July 5, 1892, but that he did so under the following circumstances: That he, for himself and said Pelzer, agreed, verbally, with C. E. Spencer, his codefendant, and others interested, that the said Spencer should bid off for the defendants the tract to be sold under said decrees for $30,000, and assign this bid under their direction; that after discussion as to what valuation should in said bid be fixed on the several tracts, a matter in which he and Pelzer were not interested, provided the aggregate valu-

ation did not exceed $30,000, it was agreed that Henrietta C. Davie was to take the home tract at $3,500; that as to the valuation to be fixed in said bid as to the water power tract, said Spencer, after making some calculations as to the amount which would protect the claims of his clients, the plaintiffs, for whom he acted, said that $13,500, more or less, would protect them; that upon this defendant objecting to this indefiniteness of amount, and insisting that it should be made definite, said Spencer said that this sum would be in $100 of the exact amount of the plaintiffs' claim, and that this valuation was assented to; that said Spencer was to put this agreement in writing, at which time defendant was called away; that upon his return, being called upon by said Spencer to sign this agreement in writing, this defendant expressed his dislike to signing the paper without reading it; but never doubting that the written paper was the said agreement, put in writing, and on the faith, confidence, and assurance that it was, which he had every reason to believe and no reason whatever to doubt, and being in great haste to catch the railroad train which was about to leave, he did sign for himself and said Pelzer the said paper so presented to him by the said Spencer, who at the same time assured him that he, Spencer, would send a copy of said paper to himself and said Pelzer, each, to Charleston by the first mail.    3. That he never would have signed said paper but on the faith, confidence, and assurance, that what it contained was the said verbal agreement, and that he never intended to enter into any such agreement as the paper he signed is alleged to be, or to sign any paper such as the paper he signed is alleged to be, or having the effect such paper is alleged to have.    4. This defendant denies that he and his codefendants signed any paper by which they obligated themselves to make good the claims of plaintiffs, set forth in the complaint, and denies that they were the parties to make said claims good, and demands production of the said paper.    5. That this defendant never heard at the time anything of any claim of Jones and Robertson being assigned to plaintiffs which they

were to make good, or indeed of any such claim at all, the same not having been mentioned in his hearing, and first heard of it and plaintiff's claim in suit long afterwards from said Spencer, to his great surprise. 6. That he denies ever having incurred any liability in connection with said sale, save as he has heretofore set out, and alleges that he has fully discharged the same, and from the time of being first informed of the liability alleged has always repudiated it. 7. This defendant does not know what may have taken place between the other parties in interest in the premises, during his absence above mentioned, but denies that he ever agreed verbally or in writing to make good the claims of plaintiff— an agreement which he avers would be entirely inconsistent with the verbal agreement made which has been carried into execution, and would, besides, be void for want of any consideration moving to him. Wherefore, this defendant demands that the complaint be dismissed, at least as to him.

The following is so much of the charge as seems to be in question :

Now, Mr. Foreman and gentlemen, from the contract itself, you are to determine—I mean, from the instrument of writing itself, you are to determine so much of the contract as is set forth in it, and from the oral testimony you are to determine what was the amount which these defendants became liable for, and the manner in which they became so liable. That is, whether jointly, each one guaranteeing the whole amount, or severally, each one to pay only one-fifth of the whole amount. Now a contract, any contract, this contract, if it comes up to the legal definition of a contract, must be an agreement entered into by all the parties to it, mutually binding them upon a valuable consideration to do or not to do some thing specified in the contract; and in any contract, the principal question to be inquired after and to be ascertained, is the subject matter, the thing, which is agreed to be done or not to be done. Now, in this undertaking, these parties bound themselves to become liable, to make good,

somebody bound themselves, or the terms of this paper are that somebody was to make good to Sloan & Son their claims. The terms of the contract itself don't ascertain who are to make those claims good. The jury must determine from the written paper—I have used the word contract interchangeably with the written instrument—the written instrument doesn't show who the parties are to make those claims good; it is indefinite on that point. Now, the contention of the plaintiffs is that these defendants are the parties who are to make good the claim. If you look only to the written instrument, I charge you that you can't so find, because the instrument itself is open to more than one construction upon that point. It is not explicit, and that fact can only be arrived at by the construction of the contract. It is open to more than one construction, the written instrument is, and, therefore, it is not definite and certain, and you couldn't ascertain the liability of these parties upon that one point, from the writing, unless the writing was definite and certain as to that matter. Now, the defendant, Courtenay, relies upon the allegation that he was misled in affixing his name to this instrument. The law upon that matter, Mr. Foreman and gentlemen, is, that where two parties deal at arm's length, where there is no relation of trust or confidence between the parties, but they are simply engaged in some business transaction between each other, their interest being each for himself, or adverse, as the expression is, and one of them affixes his name to a contract without any deception on the part of the other, no fraud, he is bound by it. Each party deals with his eyes open; and if he allows himself to be mistaken, it is his own fault, not the fault of the party with whom he deals, and he is, therefore, bound, although he may honestly misunderstand the contract. But if there is a relation of trust, if the one party prepares the writing at the request and under the instructions of the other, and the other party is misled into signing a paper, trusting to the other party to prepare the paper, reposing confidence in his skill, in his good faith in the transaction, and that other

party abuses the confidence thus reposed, prepares a different paper from what he was instructed and from what the other party entrusted him to prepare, and the other party is induced to sign that paper, believing it to be something else from what it was, different from what he instructed that it should be, he is not bound by his signature, because the signature was obtained unfairly, and in good conscience he couldn't be held liable. Now, you are called upon to determine whether this is a joint liability, or whether each man only bound himself upon entering into this agreement to see that these claims were made good, if you conclude that they were the parties who were to make the claims good. Where one authorizes another to act for him in a matter, and the other party acts within the scope of his instructions, he binds the party who so authorizes him to whatever he is authorized to do. If he entered into the contract, he is bound by the contract which his agent makes. But where all the parties are together, and each one acting for himself, where there is no relation of agency, then the contract which they enter into is made by each man for himself, and unless it be necessarily a joint contract from the very subject of the contract itself, then each one is only severally liable. If two or more men make a note promising to pay a sum of money, and each one of those two men signed that note, they bind themselves jointly, unless the terms of the note itself make it plain that they are only severally or jointly and severally liable. But where men enter into some agreement which, from the very nature of the agreement, or from the very subject-matter of the agreement, doesn't constitute each man liable for the whole, but each one, from the intention of the parties, only assumes his own portion of the liability, he is only bound for that portion of the liability which he voluntarily assumes. Now, Mr. Foreman and gentlemen, that is the case, the law of the case, in so far as the Court sees that it can aid you by legal principles in arriving at a conclusion in this matter. Counsel on both sides have submitted certain propositions of law, which they request the Court to charge you as appli-

cable to the case, and in so far as they are applicable, I will read them to you and charge them.    These are the plaintiffs' requests to charge: 1st. "If the jury believe that the defendant, Courtenay, knew that the plaintiffs had declined to consent to the assignment of bid until both their claims, referred to in the written paper of July 5th, 1892, should be made good, and that said paper actually provided for both claims, and that he admitted to plaintiffs that the paper had provided for both claims, and that without such admission the plaintiffs would not have consented to the transfer of the bid, and that the contract has been made out otherwise, then the said defendant is estopped to deny that at the signing he did not understand that both claims were provided for."    I charge you that proposition.    * * *  5th. "A mere mistake must be mutual between the two contracting parties, and if one only of the parties of the one part—when more than one —makes a mistake, it does not entitle any of the parties of his part to be relieved of the contract as against the other party."    That is true, if the obligation is a joint obligation, and in that sense I so charge you.    6th. "That if the jury find that the agreement was reduced to writing only in part, it was competent to prove the remainder thereof by parol testimony; but it was not competent by parol testimony to prove that the real contract was different from so much thereof as had been reduced to writing, except in a direct proceeding, having for its object the rescission of the supposed contract, and the restoration of the original status of the parties to the alleged agreement."    I charge you that. 7th. "If Courtenay signed the agreement negligently or inadvertently, and if Sloan & Son, without knowledge of Courtenay's misunderstanding of the agreement, followed its terms, and released their security against Jones and Robertson, or any other party in interest in the land to be sold, and accepted the agreement as prepared in lieu of their security, then Courtenay could not avail himself of his own mistake."    I charge you that.

The defendant's requests to charge, in so far as the Court

considers them applicable, are as follows: * * * The 7th proposition is refused. The 8th proposition is declined. The 10th is a charge known as the statute of frauds. The statute of frauds, Mr. Foreman and gentlemen, so far as it has any application in this case, is to the effect that no agreement on the part of one person to stand or guarantee, or to pay the debt of another, is binding, unless the agreement is reduced to writing, or some note or memorandum of the agreement is reduced to writing and signed by the party who so guarantees or undertakes to pay it, and who is sought to be charged. Now, the contract in this case has been partly reduced to writing, and unless the jury can find from the writing that these defendants did assume to pay the debt of another, the claims of Sloan & Son, both their original claim and that assigned them by Jones and Robertson, were claims against some other parties, not against these defendants; and unless the jury are satisfied that these defendants did enter into a written promise to pay these two claims or to make them good, to pay such part of it as might not be paid out of the fund, then the statute of frauds would apply, and any agreement other than the written agreement, or an agreement of which the memorandum was written and signed, would be void. I take it that is what counsel desires, in asking that charge with reference to the statute of frauds. The defendants present an additional request: "That the written instrument on which this action is brought does not impose an obligation upon the purchasers to make good the claims of Sloan & Son, and the claim transferred that day to Sloan & Son by Jones and Robertson." It does not except by construction, and, as the Court has already charged you, the writing is susceptible of more than one construction on that matter; and, therefore, the Court charges you this proposition, that it does not specifically and definitely fix the obligation upon these defendants; and, as a necessary inference from that charge, the additional proposition is added, that it didn't impose such an obligation upon Courtenay. I charge you that also.

21—54

Now, Mr. Foreman and gentlemen, as you have already been charged, you are to ascertain, first of all, whether there is an agreement, what that agreement is, what liabilities it imposes, if any at all, upon these defendants; whether or not the defendants have met the liability so imposed, and if not, then what is the additional liability upon them for which these plaintiffs are entitled to your verdict.    If you conclude that the plaintiffs are entitled to recover, it is admitted that the amount which they could recover, that the greatest amount under the facts as they exist at the time of this trial, would be the sum of $261 and some cents—seven cents, I think—with interest from the 3d day of November, 1892, at the rate of seven per cent. per annum.    So, if you conclude that the plaintiffs are entitled to recover, then your verdict will be, "We find for the plaintiffs" so many dollars, whatever amount you shall ascertain that sum to be, including the interest on it, and write the amount in words, not in figures, Mr. Foreman.    If you conclude that the plaintiffs are not entitled to recover, then your verdict will be, "We find for the defendant."    Write the verdict on the complaint, Mr. Foreman, and sign your name to it, writing the word "Foreman" after it.

Mr. Youmans : I am obliged to ask your Honor to charge on this point : If the jury find that this defense of Courtenay individually, relying upon the written agreement not containing the verbal agreement as made by him, they should find in his favor.

Mr. Wilson : I shall also ask your Honor that you will instruct the jury, that if they conclude that this was an individual agreement that each man pay one-fifth, they might find against Courtenay and in favor of my clients.

The Court : The defendant, Courtenay, as you have caught from the testimony in the case, as well as the argument, claims that he is not bound by this contract for reasons which have been stated; and if you should conclude that he is not bound, it would be competent for you, while you found in his favor, still to find a verdict for the amount against his

codefendants, under the view of this transaction which the Court takes, and upon which I have already charged you. On the other hand, if you conclude that his special defense, that he was misled or that this was not the agreement which he made, isn't sustained, but that he is bound for one-fifth of the amount, then it would be competent for you to find a verdict against him for that amount, it being conceded that one-fifth of the whole portion of this liability remains unpaid now, and that he is the only party who has not paid. It would be competent for you to find a verdict against him for that amount and in favor of the other defendants in the case, and the verdict would be, "We find for the plaintiffs against the defendant, William A. Courtenay, so many dollars." Or, if you conclude that he was not bound, if you find a verdict against the other defendants and not against him, your verdict would be, "We find against these other defendants, naming them, so many dollars." "We find for the plaintiffs so many dollars against the other defendants," whoever your verdict was against.

From verdict and judgment against defendant, Courtenay, he appeals on following exceptions:

1. To his Honor's refusal of the motion to transfer the cause from Calendar 1 to Calendar 2.

2. And of the motion that the cause be tried by the Court.

3. And of the motion that the equitable defense of Courtenay be tried by the Court.

4. To his Honor's holdings (a) That by the agreement sued on, the subject of the action, the plaintiffs were not to compete in the bidding, provided their claim was made good for the full amount. (b) That there was a promise by somebody, whoever made the promise, to see that the claim of plaintiffs was paid. (c) That said promise was a money demand. (d) That the defendant, Courtenay, did not set up an equitable defense. (e) That the defense set up by Courtenay, and claimed to be an equitable one, was similar to the defenses met with every day in suits upon a money

demand—a failure of consideration, or facts rendering the contract void.    (f) That the cause, naturally, and by common practice, and *de jure*, was triable by a jury, and was properly on Calendar 1.    (g) That neither the cause, nor any portion of it, nor any issue in it, was triable by the Court or removable to Calendar 2.

5. That his Honor erred in holding competent, over objection made by counsel of defendant, Courtenay, plaintiff's question to the witness, Courtenay, whom plaintiffs had put upon the stand to testify, "Didn't you sign a bond in the McCrady case, and say that you had never signed such a bond?" "and afterwards deny that you had signed it?" "Did you sign a bond, and afterwards say you had not signed it?" "State whether or not you said that you had signed a bond, or whether you said that you had not?"

6. That his Honor erred in ruling that the defendant, Courtenay, had, while the plaintiff's testimony in chief was being taken, already given his testimony in behalf of his own defense.

7. And in ruling that it was competent for plaintiffs to reply to this testimony by showing that Courtenay did, at some other time, understand the agreement.

8. And in ruling that it was competent to prove, by the witness, Tucker, that the defendant, Courtenay, made a declaration, months after the execution of the written agreement, that he then knew of it, and knew of its contents.

9. And in allowing the witness, Tucker, to testify by refreshing his memory from the evidence, documentary evidence, that defendant, Courtenay, asked witness, months after the execution of the written agreement, that a telegram be sent Spencer, to the effect that the paper Spencer then held bound himself and others who signed it, to make good the account of J. E. B. Sloan & Son.

10. And in allowing the same witness to testify that this account was for the indebtedness of Jones and Robertson to plaintiffs.

11. And in allowing the witness, Spencer, to testify,

against objection, that he withdrew his refusal to make the assignment, to make the transfer of the bid, and what caused him to do it; and allowing the answer thereto, which the witness gave.

12. And in allowing the witness to testify that he received a satisfactory answer from his clients, Sloan & Son.

13. And in ruling that this testimony was not as to transactions between witness and his clients.

14. To his Honor's overruling the motion for nonsuit.

15. To his Honor's ruling that the meaning of the written agreement is that somebody was to make good the claims of plaintiffs.

16. To his Honor's ruling that the question as to who was to make good the claims of plaintiff is a question which must be submitted to the jury.

17. To his Honor's deciding a question of fact that evidently without the water power the defendants did not care for the other land.

18. To his Honor's deciding that the contract, the alleged contract, if it be a contract, is based upon a sufficient consideration.

19. Because his Honor, while correctly holding that the transaction of 5th July, 1892, the subject of the suit, and on which it was brought, did not have the mutuality necessary to constitute this into a contract, erred in holding that there was other evidence tending to show that subsequently, months after this, the minds of the parties came together.

20. That his Honor erred in holding that, however slight that evidence might be, it is a question which must be determined by the jury and not by the Court.

21. That his Honor erred in holding that, under that view, the matter must be submitted to the jury upon the evidence which had been offered.

22. That his Honor erred in receiving the evidence stated in exceptions 19 and 20.

23. That his Honor erred in holding that there was any

competent evidence tending to show that the contract which is alleged in the complaint existed.

24. That having decided that the transaction of July 5, 1892, imposed no obligation upon the defendants to make good the claims of plaintiffs, his Honor erred in not granting a nonsuit.

25. That his Honor erred in not receiving in evidence the letter of Pelzer to Courtenay, October 9, 1897.

26. That his Honor erred in allowing the witnesses, Tucker and Sloan, to repeat, against objection, when plaintiffs were examining in reply, after defendant's testimony had closed, the testimony which they had given while plaintiffs were examining their witnesses in chief.

27. That his Honor erred in charging the jury: (a) That the matter was principally one for them to determine. (b) And that they must determine whether there was a contract between plaintiffs and defendants. (c) And if there was a contract, what were its terms. (d) And that the jury must supply such parts of the contract as do not appear in the written instrument. (e) And that the language of the paper was that "the claim of plaintiffs be made good," &c., whereas its language is, "subject to their right, that their claim be made good," &c. (f) And that the jury was to determine from the oral testimony what was the amount which these defendants became liable for, and the manner in which they so became liable—that is, whether jointly, each one guaranteeing the whole amount, or severally, each one to pay only one-fifth of that amount. (g) And that this contract—if it comes up to the legal definition of a contract—must, &c. (h) And that in this undertaking *these parties* bound themselves to become liable to make good. Somebody bound themselves, or the terms of this paper are, that somebody was to make good to Sloan & Son their claims. (i) And that "the terms of the contract itself don't ascertain who are to make those claims good. The jury must determine from the written paper." I have used the word contract interchangeably with

the written instrument—the written instrument don't show who the parties are to make these claims good; it is indefinite on that point. Now, the contention of the plaintiffs is, that these defendants are the parties who are to make good the claim. If you look only to the written instrument, I charge you that you can't so find, because the instrument itself is open to more than one construction upon that point. It is not explicit, and that fact can only be arrived at by the construction of the contract. It is open to more than one construction, the written instrument is, and, therefore, it is not definite and certain, and you couldn't ascertain the liability of these parties upon that one point from the writing, unless the writing was definite and certain as to that matter. (j) And that the jury was called upon to ascertain whether this is a joint liability, or whether each man only bound himself upon entering into this agreement to see that these claims were made good, if you conclude that they were the parties who were to make the claims good. (k) And that the 5th request of plaintiffs is true, if the obligation is a joint obligation, to wit: "A mere mistake must be mutual between the two contracting parties, and if one only of the parties of the one part—when more than one makes a mistake—it does not entitle any of the parties of his part to be relieved of the contract as against the other party." (l) And in charging plaintiffs' 6th request: "That if the jury find that the agreement was reduced to writing only in part, it was competent to prove the remainder thereof by parol testimony; but it was not competent by parol testimony to prove that the real contract was different from so much thereof as had been reduced to writing, except in a direct proceeding, having for its object the rescission of the supposed contract and the restoration of original status of the parties to the alleged agreement." (m) In charging plaintiffs' 1st request. (n) In charging plaintiffs' 7th request.

28. That his Honor erred in refusing to charge: (a) Defendant Courtenay's 7th request, "One is not chargeable with negligence for not using that excess of care which re-

fuses to take anything on trust that is susceptible of verification. Such a principle would impede the transaction of business, which a reasonable confidence promotes." (b) And defendant Courtenay's 8th request, "The negligence which will preclude a party from avoiding a written instrument to which his signature is affixed, on the ground of fraud, accident, mistake or surprise, must amount to the violation of a positive legal duty."

29. That his Honor erred in reiterating to the jury in his charge that they were to ascertain, first of all, whether there was any agreement, what that agreement is, what liabilities it imposes, if any at all, upon the defendants.

30. That his Honor erred in charging the jury that it was competent for them to find a verdict against Courtenay alone, and in favor of the other defendants.

31. That in this action against five defendants, as bound jointly only by a joint obligation, a verdict against the defendant, Courtenay, alone is illegal, and cannot be permitted to stand.

32. That the judgment is illegal, and cannot be permitted to stand for these reasons, in addition to those set forth above: (a) That the Judge not having decided upon the equitable defense set up by the defendant, Courtenay, no judgment can be lawfully entered up against him. (b) That the complaint charging only a joint liability against the five defendants, a judgment cannot be lawfully entered against the defendant, Courtenay, alone. (c) That the four other defendants having been released, the defendant, Courtenay, is also released.

*Mr. Leroy F. Youmans,* for appellant, cites: *Judgment against one of several joint contractors is not possible:* 14 S & R., 123; 8 D. & E., 169; 1 Wend., 172; 2 Wms. & Saund., 48; 3 Penn & Watts, 60; 23 Pick., 444; 9 Paige, 954; 7 Johns., 210; 9 Paige, 594; 17 Mass., 581; 4 Adol. & Ell., 675; 1 B. & P., 630; Code, 141; 2 Bay, 517; 2 McC., 276; 1 N. & McC., 355; 18 S. C., 605. *Judgment being an impos-*

*sibility, defendant should be relieved from it:* 74 Pa. St., 49;
6 O. B., 682; 51 E. C. L., 681; 6 Adol. & Ellis, N. S., 681;
14 Am. Law. Rev., 494; 2 Rich., 49; 3 Strob., 265; Cheves,
165; 48 S. C., 324.    *The contract cannot be construed to
bind defendants to pay anything to anybody:* 30 E. C. L.,
312; 22 N. Y., 438; 37 N. Y., 577; 15 E. C. L., 514; 24
Wend., 82; 1 Cr. & Mee., 48; 7 Cranch, 90.    *Court should
construe paper, and not leave it to jury to say what the par-
ties intended it to be:* 3 S. C., 253; 23 S. C., 202; 37 S. C.,
193; 22 S. C., 288; 19 S. C., 124; 39 S. C., 389; 17 S. C.,
480; 15 S. C., 32; 27 S. C., 360.    *Mistake by one party is
good defense:* 110 N. Y., 55; 48 N. Y., 415; 69 Ill., 481; 4
Rich., 313.    *When writing does not show the agreement, it
will not be enforced:* 2 Hill, 316; 2 Spear, 11.    *Courtenay's
defense should have been tried by the Court:* 38 S. C., 199;
18 S. C., 231; 22 S. C., 320; 17 S. C., 544; 12 S. C., 108; 21
S. C., 394; 28 S. C., 369; 20 S. C., 489; 17 S. C., 592; 23 S.
C., 391, 488; 24 S. C., 320; 16 S. C., 332; 28 S. C., 85; 95
E. R., 492; 15 S. C., 202; 42 S. C., 408, 94; 11 S. C., 316;
52 S. C., 463, 479; 43 S. C., 190; 53 S. C., 129.

*Messrs. G. W. S. Hart* and *I. D. Witherspoon,* contra,
cite: *Under Code, the common law rule as to excess of par-
ties does not apply:* 27 S. C., 321.

Mar. 7, 1899.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.    The plaintiffs bring this
action to recover from the defendants a specified amount
claiming to be due under a contract, a part of which is in
writing, supplemented by certain parol testimony set out in
the "Case."    The written instrument relied on as a part of
said contract reads as follows: "Chester, S. C., 5th July,
1892.    Re. Mary F. McCrady *vs.* Allen Jones *et al.*    With
the consent and at the request of all the counsel in this cause,
I, the undersigned, agree to bid off the lands as follows: (1)
The water power tract (544 acres), at $13,578.    (2) The
balance of the lands, less the house tract of 562 acres (to be

sold together), at $12,922.   These two bids to be assigned under the direction of F. J. Pelzer, W. A. Courtenay, J. R. London, T. C. Robertson and Allen Jones, the same being made for their benefit, but subject to the right of J. E. B. Sloan & Son, that their claim be made good, and also that of Jones and Robertson, assigned to the said Sloan & Son this day.   (3) The house tract (of 562 acres), No. 14 on plat, at $3,500; this bid to be assigned to Mrs. Henrietta C. Davie, the same being made for her benefit.   It being understood and agreed by and between all parties, that if any of said lands should be run up above the said figures, the surplus to go to the party or parties for whose benefit the bids are made.   (Signed) C. E. Spencer.   We consent. (Signed) Edward McCrady, jr., T. W. Bacot, attorney Mrs. Henrietta C. Davie, C. E. Spencer, W. B. Wilson, jr., William A. Courtenay, and for F. J. Pelzer, Jno. R. London, T. C. Robertson, Allen Jones."

The parol evidence relied on to supplement the agreement evidenced by the written instrument above copied was as to what occurred at a conference of the parties, which will hereinafter be more particularly referred to, which was held on the day of sale, just before the sale, culminating in the signing of the said written instrument.   The land was sold on the 5th of July, 1892, and bid off by Mr. Spencer in accordance with the terms of the written instrument above set forth.   Matters remained in this condition until the 3d of November, 1892, when Mr. Spencer, as attorney of Sloan & Son, received from the clerk of Court, who had made the sale, one-fifth of the net proceeds of the sale of the water power tract, and applied the same to the two claims mentioned in the written instrument aforesaid, held by him as attorney for Sloan & Son, leaving a balance due on said claims amounting, at that date, to $1,305.35.   Subsequently, and before the commencement of the action, the defendants, London, Robertson and Jones, each paid to Spencer one-fifth of said balance, leaving a balance of $522.14, and this action was brought to recover that balance, with

interest thereon from 3d of November, 1892.    But subse-
quently to the commencement of this action, Mr. Pelzer paid
up one-half of said balance, and judgment was, in fact,
claimed only for the other half, to wit: the sum of $261.97,
with interest from the 3d of November, 1892.   On the 28th
of November, 1892, Mr. Spencer wrote appellant, stating
that he had received from the clerk of the Court one-fifth of
the net proceeds of the sale of the water power tract, which
left a deficiency due on the claims of Sloan & Son of
$1,305.35, and asking him for payment of one-fifth of said
deficiency, and also one-fifth for Pelzer.   Some correspond-
ence ensued between them, in which appellant denied any lia-
bility for said sum, but expressing a willingness to pay one-
fifth of the deficiency mentioned in the conference on the day
of sale—some one or two hundred dollars—and enclosing
his check to cover both his and Mr. Pelzer's portion of such
deficiency—which, however, Mr. Spencer declined to use,
as it was sent with an accompanying denial of any further
liability.   The position taken by appellant is fully and
clearly stated in his answer; and as that answer will be in-
corporated in the report of this case, we need not undertake
to state it here, further than to say that the appellant con-
tends that in the verbal agreement, which he supposed was
set out in the written instrument, which he signed without
reading it, the agreement was that the defendants would
make up any deficiency in the larger claim held by Sloan &
Son (the only one of which he had heard), if one-fifth of
the net proceeds of the sale would not be sufficient to pay the
claim, provided such deficiency would not amount to more
than $100, and that he never did agree to pay anything on
the claim of Jones and Robertson, which was assigned to
plaintiffs on the day of sale, as he knew nothing about it, and
had never heard of it until after this controversy arose.
Subsequently, Mr. Spencer, by the written directions of the
defendants, assigned his bid to the appellant, to whom the
clerk made titles.   This Mr. Spencer says he did because he
had heard from plaintiffs that they were satisfied that he

should do so, which probably refers to a telegram sent by
Sloan & Son to Spencer, which will be hereinafter more par-
ticularly referred to. The appellant persisting in his refusal
to comply with the contract, as alleged by plaintiffs, upon the
ground that he had never entered into any such contract, this
action was commenced on the 30th of September, 1897, and
came on for trial before his Honor, Judge Klugh, and a jury
at spring term, 1898. After the pleadings were read, coun-
sel for appellant moved to transfer the case from Calendar 1
to Calendar 2, upon the ground that the answer of appellant
set up an equitable defense, properly triable by the Court
and not by the jury. This motion was refused, to which
exceptions were duly taken. The plaintiffs then proceeded
to offer testimony in support of their claim, and at the close
of their testimony, counsel for defendants moved for a non-
suit upon the grounds "(1) That the written instrument
sued upon imposes no obligation upon the purchasers to
make good the claims of Sloan & Son. (2) That there is
no testimony whatever showing any consideration whatever
of the purchasers for assuming such obligation. (3) That
there is no sufficient evidence afforded of the plaintiff's case
as made, to warrant the issues being referred to the jury."
The motion for a nonsuit was refused, and the defendant
proceeded to offer his testimony, and at the close of all the
testimony the Circuit Judge charged the jury as set out
in the "Case," who returned a verdict in the following form:
"We find for the plaintiffs against William A. Courtenay,
$360.57," being the said sum of $261.07, with interest from
the 3d of November, 1892, upon which verdict judgment
was entered against Mr. Courtenay alone, and from this
judgment he appeals upon the thirty-two exceptions set out
in the record. For a full understanding of the case, as
made by this appeal, the Reporter will set out in his report of
the case, a copy of Mr. Courtenay's answer, a copy of the
Judge's charge and a copy of the exceptions.

The exceptions are numerous, some of them divided into
several subdivisions, and instead of considering them *seria-*

*tim,* we propose to consider the several questions which we understand these exceptions are intended to raise. These questions may be stated in a general way as follows: 1st. Whether there was error in holding that the case was properly triable by a jury. 2d. Whether there was error in any of the rulings as to the admissibility of testimony. 3d. Whether there was error in refusing the motion for nonsuit. 4th. Whether there was any error in the charge to the jury or in refusal to charge certain requests. 5th. Whether there was error in entering judgment against Courtenay alone.

Before proceeding to consider these questions, it may be well to give some account of the transactions out of which this controversy arose. While there is a direct conflict in the testimony as to some of the facts, there are others about which there seems to be no dispute. The lands referred to in the written instrument, set out in this opinion, were ordered to be sold at public outcry by the clerk of the Court of Common Pleas for Chester County—see *McCrady* v. *Jones,* 36 S. C., 167—the water power tract to be sold separately, and the remainder of said land to be sold in such parcels "as may be most conducive to the interests of the parties entitled." Accordingly, the clerk had the lands, outside of the water power tract, and the home tract, divided into a number of smaller tracts. Before the day of sale a syndicate, composed of the five persons named as defendants in this case, was formed for the purpose of buying the property at a price not exceeding the sum of $30,000, with a view to developing the water power. On the day of sale, 5th of July, 1892, all of the members of this syndicate, excepting Mr. Pelzer, who was represented by Mr. Courtenay, together with Mr. Spencer, who represented the plaintiffs, as creditors of one of the parties interested in the lands, Mr. Wilson, who represented certain other creditors, Mr. Bacot, who represented Mrs. Henrietta C. Davie, and Mr. McCrady, who, as we understand it, represented his wife's interests in the land, met at Chester C. H., where the sale

was to be made, and had a conference as to how the sale should be conducted. At that conference it appeared that Mrs. Henrietta C. Davie desired to purchase the home tract, and that the syndicate above mentioned wanted the water power tract and lands adjoining other than the home tract. But as the syndicate was only willing to buy the whole property at a price not exceeding $30,000, and as Mrs. Davie wanted to buy the home tract, and as Mr. Spencer was desirous that the water power tract should bring an amount sufficient to pay the claims of plaintiffs which he represented, and which, as he claimed, was secured by a lien upon a one-fifth interest in that tract, it became necessary to determine what amounts should be bid for the water power tract, the home tract and the other lands—the aggregate of these bids being limited to the sum of $30,000. After very considerable conference, the amounts of these several bids were agreed upon as stated in the written instrument; but as Mr. Spencer did not then know the precise amount of the claim of the plaintiffs, he insisted that provision should be made to secure any deficiency that would arise in case the one-fifth of the proceeds of the sale of the water power tract should prove insufficient to satisfy the plaintiffs' claim. Just here there is a direct conflict of testimony—the plaintiffs insisting that the arrangement was that if any such deficiency should arise in the claim of the plaintiffs, including the claim of Jones and Robertson, which had that morning been assigned to plaintiffs, the defendants would make the same good, while the appellant insists that his understanding was that the defendants should only make good the deficiency to the extent of $100—the amount which Mr. Spencer estimated that such deficiency would be. These terms being thus agreed upon as was supposed, Mr. Spencer undertook to embody the same in writing. The appellant being called off, left the room where the conference took place, the written instrument above copied was prepared in his absence, and upon his return, being in a hurry to catch the train, he,

without reading the paper, signed the same for himself and Mr. Pelzer.

We will next proceed to consider the several questions presented by the exceptions, as stated above. First, was there any error on the part of the Circuit Judge in holding that this was a case properly triable by a jury. The appellant contends that, in his answer, he sets up an equitable defense, which should be passed upon by the Court and not by a jury. We do not think that the answer sets up an equitable defense. There is no claim that the written instrument relied upon by plaintiffs should be reformed, nor is there any claim that the contract as set out by plaintiffs should be rescinded. It is nothing but a simple denial that the contract, as set up by plaintiffs, is the contract into which appellant entered; and this raises a legal and not an equitable issue. The exceptions raising the first question are overruled.

The second question must be considered in subdivisions, as it relates to several rulings by the Circuit Judge. (a) It appears that Mr. Courtenay was put upon the stand as a witness by plaintiffs, and during his examination he was asked by plaintiffs, with the avowed object of testing the accuracy of his memory, this question: "Didn't you sign a bond in this McCrady case, and say that you had never signed such a bond?" Objection was interposed by appellant's counsel, "on the ground of irrelevancy," and the objection was overruled. In all questions as to the irrelevancy of testimony, large discretion must necessarily be vested in the Circuit Judge from the very nature of the case, and it must be a very clear case of error, harmful to the party interposing the objection, which would justify interference by this Court. In this case, it is very obvious from the testimony that the differences between these parties arose entirely from misunderstanding and difference in recollection, and not from any improper motives—in other words, there was an honest difference between these parties, and hence it does not seem to us to have

been irrelevant to test the memory of each. At all events, we see no error of law in overruling the objection. Exception 5 must be overruled. Exception 6, relating to the same matter, cannot be sustained. While it is true that Mr. Courtenay was put upon the stand as plaintiff's witness, that did not deprive either party of the right to ask him any question as to any material issue in the case, and it is unquestionably true that Mr. Courtenay had, as he had a right to do, testified fully as to what occurred in the conference.

(b) Exceptions 7, 8, 9 and 10, seem to relate to certain objections interposed by appellant during the examination of the witness, Tucker. This witness was examined for the purpose of showing that some time in October, 1892, a telegram was sent by Sloan & Son to their attorney, Mr. Spencer, at the instance of appellant. This was objected to upon the ground that the contract sued upon having been made on the 5th of July, 1892, what occurred in October following could throw no light upon such contract. The Court ruled that the telegram referred to was not competent evidence. The witness was then asked whether Mr. Courtenay instructed him to send the telegram over the signature of Sloan & Son to Mr. Spencer, to which the witness replied without objection, "Yes, sir." The witness was then asked what Mr. Courtenay told him to put in the telegram. After some colloquy between the Court and counsel, the Court ruled that if the witness could state what Mr. Courtenay directed him to put in the telegram, he might state that as a declaration made by Courtenay in reference to the matter in issue; and that the fact that such declaration was made after the making of the alleged contract, would not render such declaration incompetent. The witness then proceeded to state that, while it is very difficult after a lapse of six years to remember every word of a conversation, he clearly recollected that Capt. Courtenay came into the office on the 24th day of October, 1892, adding that he refreshed his memory "from the evidence, documentary evidence;" whereupon counsel for appellant objected to his refreshing

his memory, saying that he understood the ruling of the Court to be that the witness could state what he remembered, to which the Court assented; and the witness was directed to proceed to state what he remembered, and testified that appellant requested him to send the telegram, which was to the effect that the paper that Mr. Spencer then had, bound himself and others, who signed it, to make good the account of J. B. E. Sloan & Son. Two points in relation to these objections to the testimony of Mr. Tucker seem to be made by exceptions 7, 8 and 9, one of which is that the Circuit Judge erred in ruling that the witness might refresh his recollection by referring to the copy of the telegram referred to, but we do not understand that he made any such ruling. On the contrary, he ruled that the telegram itself was incompetent, but that the witness might state, from his own memory, if he could, what were the contents of the telegram which he says he sent to Spencer, over the signature of Sloan & Son, at the request of Courtenay. But if such had been the ruling, we are not prepared to say there would have been any error in it. The witness having testified that he had sent a telegram to Spencer, at the request of Courtenay, to which he had signed the name of J. B. E. Sloan & Son by the authority of one of the members of that firm, when asked what were the terms of the telegram which Mr. Courtenay had instructed him to send, we see no reason why he should not be permitted to refresh his memory as to the words used in the telegram, after he had testified that he had sent it in accordance with the direction of Mr. Courtenay. The other point of objection is that this matter, which occurred months after the contract sued upon was entered into, was incompetent to show what were the terms of such contract. It seems to us that the testimony was competent in more than one respect. It was competent, as the Circuit Judge held, as an admission or declaration by appellant as to the terms of the contract. And it was also admissible on the ground of estoppel. There is no doubt of the fact that there was a controversy between Spencer and

22—54

Courtenay as to the terms of the contract—the former contending that he was not bound to assign the bids which he had made until the claim of Sloan & Son, including the claim of Jones and Robertson, which had been assigned to them on the morning of the sale, was made good, while the latter contended that the said claim of Jones and Robertson was not contemplated in or provided for in the contract. If, therefore, Spencer assigned the bids upon any assurance that the claim of Sloan & Son, including that assigned to them by Jones and Robertson, would be made good by the defendants, then they would be estopped from disputing the claim made by Spencer; and surely any testimony tending to show that such assurance had been given by Mr. Courtenay—the only one of the defendants who semed to be disputing Mr. Spencer's position, would be competent upon the ground of estoppel, if not competent upon any other ground. Exception 10, included in this subdivision, imputing error in allowing the witness, Tucker, to testify that the claim of Jones and Robertson was included in the account referred to in the telegram, cannot be sustained. In the first place, that witness did not so testify. This witness was examined three times—before Jno. C. Mehrtens, notary public, on the 9th of April, 1898, which we suppose was before the trial, at the trial, and again in reply. On the last occasion no reference whatever was made to the claim of Jones and Robertson; when he was examined in chief as a witness for plaintiffs, he simply stated: "My connection with the office (referring to the office of Sloan & Son), had brought to my attention that Jones and Robertson were indebted to J. B. E. Sloan & Son, and I knew a settlement was attempted to be made from the sale of the Landsford property, but I was not familiar with the details;" and to this testimony no objection whatever was interposed. When examined before Mr. Mehrtens, as notary public, all that he said in reference to the claim of Jones and Robertson was substantially the same as that quoted from his testimony in chief at the trial; and this was said in response to appellant's first cross-interroga-

tory, and said without objection. - It is obvious, therefore, that exception 10 must be overruled.

(c) Exceptions 11, 12 and 13 relate to objections to the testimony of Mr. Spencer as to the time when, and the reason why, he withdrew his refusal to assign the bids which he had made for the defendants. The testimony shows that Spencer had refused to assign these bids because the appellant had taken the position that, according to his understanding of the agreement, he was under no obligation to pay anything more than he had already paid; but when he was informed by his clients, through the telegram above referred to, that they were satisfied, the ground of his objection was removed and he assigned the bids. How this testimony can be regarded as incompetent we are at a loss to perceive. These exceptions are overruled.

(d) Exceptions 19, 20, 21 and 22 are disposed of by what has already been said, and exception 23 is too general to require any consideration.

(e) Exception 25, imputing error in excluding the letter of Pelzer to Courtenay, of 9th October, 1897, cannot be sustained. We do not find any letter of that date mentioned in the "Case," except that the contents of such a letter was offered as a part of a conversation brought out by plaintiffs, and ruled inadmissible, which was clearly right, as it was not a part of any evidence offered by plaintiffs; of course, when it was first offered to prove the contents of such letter, the letter itself was the best evidence of what it contained; and besides, its contents were brought out without objection, as Mr. Courtenay was permitted to state a conversation he had with Mr. Pelzer, giving his reasons for paying up.

(f) Exception 26, imputing error in allowing the witnesses, Tucker and Sloan, to be examined in reply for the purpose of reiterating what they had said in their testimony in chief, cannot be sustained. These witnesses having testified as to what occurred when the telegram above referred to was sent, were contradicted by Mr. Courtenay, when he was put on the stand as a witness for the de-

fense, in several particulars—notably as to his having requested the telegram to be sent—and these witnesses, Tucker and Sloan, were examined in reply, and asked whether, after hearing Courtenay's testimony, they still adhered to their previous testimony, and they both said they did.   In this we see no error of law.   The conduct of a trial must necessarily, to a large extent, be left to the Circuit Judge, and the course which he takes will not be interfered with by this Court, unless some error of law is committed. It may be that a witness for the plaintiff has made some statement, which, after hearing it contradicted by a witness for the defense, he would desire to correct or explain, and so, on the contrary, the witness, after hearing his statement contradicted, might desire to reiterate his statement notwithstanding such contradiction, and we see no error of law in permitting him to  do so.

The third general question is  as to  whether  there was error in refusing the motion for a nonsuit.   Exceptions 14-21, inclusive, and 23 and 24, seem to relate to this matter. We do not propose to consider these exceptions in detail, for the reason that some of them simply assail *the reasons* given by  the Circuit  Judge  for  refusing  the  motion, and  even  if  some  or  all  of  his  reasons ' are not   well  founded,   that   would   not   affect   the questions,   as   the   question   for   this   Court   to   determine is  whether  *the ruling*  of the Circuit Judge is erroneous, and not whether the reasons which he gave for his ruling are sound.   Besides, Rule 18 of the Circuit Court requires that a motion for a  nonsuit  must be  reduced to writing, "stating the grounds of  the motion," and these grounds are what the Circuit Court is called upon to consider, and that is what this Court is  required  to  review. That rule was complied with in this case, and the motion for a nonsuit was based upon three grounds which are, hereinabove, set out in *haec verba*.   The first of these grounds is that "the written instrument sued upon" imposes no obligation upon the defendants to make good the claims of plain-

tiffs.    But we do not understand that the action is based *alone* upon the written instrument, but upon that instrument supplemented by the parol evidence as to what passed between the parties at the conference which preceded the signing of that instrument. While, therefore, it is true that the written instrument does not, in terms, show who were to make good the claims held by plaintiffs, and in addition to this does not show the amount of such claims, yet the plaintiffs rely upon the parol evidence above referred to, for the purpose of supplying these additional terms of the contract sued upon, which do not appear in the written instrument. The question, therefore, as to what would be the proper construction of the written instrument *if it stood alone,* is not before us, as parol evidence was received, without objection, for the purpose of supplementing the terms of the written instrument. We do not think that the first ground upon which the motion for a nonsuit was based is tenable, as there was clearly *some* testimony tending to show who were the parties who agreed to make good the claims of plaintiffs, and the amount necessary for that purpose. Whether such testimony was sufficient to establish these facts, was a question solely for the jury, and their determination as to that matter this Court has no jurisdiction to review.

The second ground is that there was no evidence whatever showing any consideration for the defendants assuming any obligation to make good the claims of the plaintiffs. We cannot adopt that view. There certainly was testimony tending to show that the defendants desired to purchase the property at a price not exceeding the sum of $30,000; that the main object of the purchase was to obtain the water power tract and such adjoining lands as might be necessary or desirable, at least, for the purpose of developing the water power; that Mr. Spencer, as the attorney of plaintiffs, held claims, secured by a lien upon a one-fifth interest in the water power tract, which under the order of sale was required to be sold separately; that

Spencer insisted that the water power tract should bring an amount sufficient to pay the claims which he held; that Mrs. Henrietta C. Davie desired to buy the home tract; that in order to attain the ends desired by the several parties, it was necessary to fix upon the amounts to be bid for the several pieces of property, in order that they should not exceed in the whole the amount which defendants were willing to give for the whole property; that accordingly the amounts to be bid were fixed upon as stated in the written instrument; but that Mr. Spencer, not knowing precisely the amount necessary to satisfy the claims which he represented, was unwilling to agree to the amount to be bid for the water power tract, unless the defendants would agree to make good any deficiency in the payment of the claims held by him, and that such agreement was made. If these facts were established (and that was a question exclusively for the jury), then there was a sufficient consideration to support the contract sued upon. We do not think, therefore, that the motion for a nonsuit could be sustained on the second ground. The third ground is disposed of by what has already been said. The exceptions, therefore, to the refusal of the motion for nonsuit are overruled.

The fourth general question, as to whether there was error in the charge to the jury, or in the refusal to change certain requests, will next be considered. The exceptions as to this matter are 27-30, both inclusive. The first of these exceptions is subdivided into quite a number of exceptions, which will not be considered in detail, as some of them are, practically, repetitions of others; some are mere statements of extracts made from the charge, without pointing to any specific error of law therein, and others are taken under a misconception of the charge. Indeed, we have found it very difficult to ascertain what are the specific errors of law imputed to the charge. We are, therefore, compelled to confine our attention to what we suppose to be the points of law wherein it is charged that the Circuit Judge has erred. The first of these is that the Circuit Judge

should have construed the written instrument and not left its construction to the jury.   While there is no doubt that the rule of law is that an instrument in writing must be construed by the Judge and not by the jury, we do not see that this rule has been violated in this case.   The Circuit Judge did construe the written instrument, and instructed the jury that, in and of itself, it was not sufficient to show the contract sued upon.   But inasmuch as the written instrument did not even purport to contain all of the terms of the contract, parol evidence was relied upon to show what were the other terms of the contract not specified in the written instrument, and from *that* evidence the jury were instructed to determine what were these additional terms of the contract.

The next point made, as we understand it, is that the Judge erred in instructing the jury that they were to determine from the evidence whether the defendants bound themselves jointly or severally, as it was called, to pay any deficiency that might appear—that is, whether each of the defendants agreed to pay the whole of such deficiency or only one-fifth part thereof.   It being manifest that there was nothing in the written instrument to indicate what was the measure of the liability of each, that matter could only be ascertained from the parol evidence, which was, of course, for the jury.   The next point made is that there was error in charging plaintiffs' 5th request, which is set out in the charge, as well as in the appellant's exceptions, which was to the effect that where two or more persons, jointly, as parties of the one part, enter into a contract with another, a mere mistake of only one of the parties contracting jointly, would not relieve any of the parties, on his part, from the performance of the contract as against the other contracting party.  ‘In this there was no error, for the reason that the essential element of mutuality would be wanting.

Our next inquiry is whether there was any error in charging plaintiffs' 6th request, which is set out in the charge as well as the exceptions.   We see no error here, as the

proposition there charged is in accordance with the well settled rule that the terms of a written contract cannot be varied, explained or contradicted by parol evidence unless there is a direct proceeding for the reformation or rescission of the contract; and this is not such a proceeding.

The next point made is that there was error in charging plaintiffs' 1st and 7th requests. The exception in which this point is made is not in such form as would require this Court to consider it, inasmuch as it does not appear in the exception what those requests were; but as they are set out in the Judge's charge, we will waive the objection as to want of form, and consider these requests. The 1st request simply sets forth one of the well settled principles of the law of estoppel, and there was no error in so charging. If Mr. Spencer were induced to change his position by assigning the bid, upon the representation made by Mr. Courtenay that both of the claims mentioned in the written instrument would be made good, appellant would, of course, be estopped from afterwards disputing such representation. Of course, whether such a representation was made, and whether Spencer acted upon it, were questions of fact exclusively for the jury, which we have no jurisdiction to consider, and, therefore, are not at liberty to express any opinion about. The 7th request rests upon a similar principle. If the appellant negligently or inadvertently signed the written instrument, without reading it, and plaintiffs were thereby induced to release their security for the claim which they held against Jones and Robertson, and accepted, in lieu thereof, the written instrument in the terms in which it read, it is clear, upon the same principle of estoppel, that the appellant could not afterwards avail himself of a mistake as to what were the terms of the written instrument, caused by his own neglect to read the paper.

The 28th exception, complaining of error in refusing to charge appellant's 7th and 8th requests, cannot be considered under the well settled rule of this Court. The "Case" does

not show that these requests, *as set out in this exception,* ever were submitted to the Circuit Judge. See *Lites v. Addison,* 27 S. C., at pages 229-30, where the reason for the rule is thus stated: "While the 'Case' as submitted by the appellant is open to amendment, as well by counsel for respondent as by the Circuit Judge when it is submitted to him for settlement, the exceptions of appellant cannot be so amended. Hence, when facts are incorrectly stated or requests to charge are not properly represented in the 'Case,' such errors may be corrected by amendment; but when they are found only in the exceptions, they are beyond the reach of amendments, and, therefore, cannot be regarded by this Court." See, to same effect, *Stackhouse v. Wheeler,* 17 S. C., at p. 105; *State v. Coleman,* 17 S. C., 473; *McPherson v. McPherson,* 21 S. C., 26; *State v. Jenkins,* 21 S. C., at p. 595. While, therefore, we do not mean to intimate that the requests to charge upon which exception 28 is based are incorrectly represented, yet this well settled rule must be applied, especially where, as in this case, its protection has been invoked. We may add, however, *ex gratia,* that we do not think this exception could be sustained even if properly before us. The 29th exception is practically disposed of by what has already been said.

Exceptions 30 and 31, relating to the question whether, in this action, a verdict against appellant alone could be sustained, have likewise been disposed of by what has been said as to the question of whether the defendants contracted each for the whole amount of the deficiency, or only for his one-fifth part thereof. The determination of that question depended upon the view which the jury might take of the parol evidence, as the written instrument threw no light upon that question; as to which the jury were properly instructed.

It only remains to consider exception 32, which is divided into three subdivisions: the first, based upon the proposition that the appellant set up an equitable defense, is disposed of by what has already been said in considering the first general question in the case; the second is but a repetition of

the proposition that a judgment could not be entered against appellant alone, has already been disposed of; the third is that the other four defendants having been released, appellant is also released. If the other four defendants were never liable for appellant's one-fifth part of the deficiency, as the jury seem to have found, then it could not be said that the other four defendants were *released* from a liability which they never incurred.

Some question seems to have been made in the Court below as to the statute of frauds, and appellant, by his 10th request, desired a charge upon that subject, which was complied with, and, as we understand it, such charge was satisfactory to appellant. At all events, we do not find in the exceptions any complaint made as to that part of the Judge's charge, and hence there is nothing for us to decide as to that matter.

A point is made in the argument that the appellant was entitled to judgment, *non obstante veredicto.* But no such motion was made before the Circuit Judge, so far as the "Case" shows; and there is no exception raising any such point. It is not, therefore, properly before us. We may add, however, that even if the point was properly before us, it could not be sustained under the case of *Bowdre* v. *Hampton,* 6 Rich., 208, as quoted in the very recent case of *Barnes* v. *Rodgers, ante,* 115.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.