### J. B. COLT COMPANY v. BRITT

#### (123 S. E., 845)

1. EVIDENCE—STRIKING OUT EVIDENCE OF BUYER AS TO EXTRINSIC AGREEMENT WITH SELLER'S AGENT HELD PROPER.—Where contract for purchase of lighting plant stated that it covered entire agreement and no additional understanding had been made with agent, · striking out evidence given by buyer of agreement with seller's agent not contained in contract, adding material condition as to installation, *held* proper.

2. CONTRACTS—EVIDENCE OF SIGNING CONTRACT WITHOUT READING IT, ON REPRESENTATIONS THAT IT CONTAINED ENTIRE AGREEMENT, HELD NOT TO WARRANT FINDING OF FRAUD AVOIDING CONTRACT.— Evidence that experienced business man signed contract without reading it on representations of agent of other party that it contained entire agreement, and that signed contract omitted material condition, *held* not to warrant finding that he was entitled to avoid written contract because of agent's fraud.

3. EVIDENCE—CONTRACT CANNOT BE VARIED BY PAROL.—A written contract cannot be avoided by parol or extrinsic evidence.

4. CONTRACTS—FAILURE TO EXAMINE CONTRACT NOT GROUND TO AVOID IT.—One cannot avoid a written contract on ground that he did not attend to its terms or read it and that he supposed that it was different in terms or was a mere form.

5. CONTRACTS—DUTY OF ONE SIGNING ·CONTRACT TO LEARN ITS TERMS STATED.—If contracting party is in position to learn contents of paper and thus fully protect himself by reading it or' having it read, he is bound by terms thereof.

6. CONTRACTS—PARTY INDUCED TO SIGN CONTRACT BY ACTIONABLE FRAUD MAY AVOID IT.—If a party is induced to sign a legal contract in ignorance of its contents without reading it or having it read, by conduct which amounts to actionable fraud, he may avoid it.

7. CONTRACTS—PRINCIPLE THAT ONE SHOULD NOT BENEFIT BY HIS OWN RECKLESS MISCONDUCT APPLICABLE TO PARTY PLEADING FRAUD. —If conduct of defendant who pleads fraud in action on contract

Note: On failure to read contract as affecting right to assert fraud in respect thereto, see notes in 6 L. R. A. (N. S.), 463; L. R. A. 1917F, 637.

On the general rule that parol evidence not admissible to vary, add to, or alter a written instrument, see note in 17 L. R. A., 270.

amounts to a reckless and conscious disregard of his duty to avail himself of means at hand to protect his own interest, principle that where one is injured by a willful wrong, and his own reckless and willful misconduct has contributed to his injury as a proximate cause, he should not be permitted to recover, applies.

8. CONTRACTS—CIRCUMSTANCES TO BE CONSIDERED IN DETERMINING WHETHER PARTY ENTITLED TO RELY ON REPRESENTATIONS, STATED.— Whether reliance on representations in a particular case is justifiable or excusable, and what constitutes reasonable prudence and diligence or reckless or conscious failure to exercise such prudence with respect to such reliance depends on circumstances such as form and materiality of representations, respective intelligence, experience, age, mental and physical condition, relation, respective knowledge, and means of knowledge of parties, etc.

9. PRINCIPAL AND AGENT—THIRD PERSON MUST EXERCISE PRUDENCE IN ASCERTAINING AGENT'S AUTHORITY.—A person dealing with agent must exercise reasonable prudence to ascertain nature and extent of agent's authority.

Before C. J. RAMAGE, SPECIAL JUDGE, McCormick, October, 1923. Affirmed.

Action by J. B. Colt Co. v. T. J. Britt. From a judgment entered on a verdict directed for plaintiff defendant appeals.

*Messrs. R. J. Southall* and *J. Wm. Thurmmond,* for appellant, cite: *Principal bound by acts of its agent:* 81 S. C., 152; 92 S. C., 33. *Misrepresentations entitled party to relief although not made with fraudulent intent:* 112 S. C., 349; 72 S. C., 368. *Intention governs construction of contract:* 73 S. C., 6. *Conditional acceptance may be proven:* 79 S. C., 461; 72 S. C., 410. *Where fraud is set up wide latitude should be allowed in testimony:* 103 S. C., 391; 113 S. C., 317; 118 S. C., 368; 111 S. C., 36; 114 S. C., 135; 97 S. C., 116. *Error to direct verdict:* 116 S. C., 322.

*Messrs. Ross & Owens,* for respondent, cite: *Courts will not protect parties from their own acts:* 9 S. C., 35; 69 S. C., 87; 17 S. E., 351; 119 S. E., 581. *Where fraud is charged limit of testimony is within discretion of trial*

*Judge:* 113 S. C., 317; 118 S. C., 368. *Variation of contract improper:* 17 Cyc., 714; 104 S. C., 461; 112 S. C., 234; 61 S. C., 166.

July 25, 1924.

The opinion of the Court was delivered by Mr. Justice Marion.

Action upon a written contract to recover the purchase price of a lighting plant. The Circuit Judge directed a verdict for the plaintiff, and from judgment thereon the defendant appeals.

The case for the plaintiff is substantially this:

On May 13, 1918, the defendant at McCormick, S. C., signed a written order for a Colt carbide generator and certain appliances and fixtures, to be furnished by the plaintiff f. o. b. its factory at Newark, N. J., for a total purchase price of $232, payable upon the terms therein specified. The order was solicited by an agent of the plaintiff, who forwarded it to the home office of the plaintiff in New York, where it was duly accepted by the plaintiff on May 20, 1918. Under the same date, the plaintiff wrote defendant, advising that the order had been received, that it had been accepted "according to the conditions set forth therein," and that shipment would be made "according to the instructions on the contract." The order contained no condition or stipulation that the plaintiff was to undertake to install, or have installed, the apparatus to be furnished, but, among other stipulations, contained the following:

"This order shall become a contract between the purchaser and the company upon acceptance thereof in the space below by one of the officers of said company; it being understood that this instrument, upon such acceptance, covers all the agreements between the purchaser and the company, and that no agent or representative of the company, has made any verbal agreements modifying or adding to the terms and conditions herein set forth. It is further under-

stood that upon the acceptance of this order the contract so made cannot be cancelled or revoked by either party nor may it be altered or modified by any agent of the company, or in any manner except by agreement in writing between the purchaser and the company acting by one of its officers."

The goods were shipped by plaintiff and were received by defendant, who at the time of the trial in October, 1923, had the boxes containing the equipment in his possession.

The defendant admitted the execution of the written contract set up by plaintiff, but alleged that it was procured by fraud, in that the plaintiff's agent had induced the defendant to sign it without reading it by falsely representing that the order embodied the terms and conditions of the contract actually agreed upon between them, which were, in substance that the plaintiff was not only to furnish the plant at a certain price, but also to install it at an additional cost to defendant of $35. The theory or theories of defense upon which defendant's answer is framed are not entirely clear. The answer undertakes to allege substantially the foregoing facts set forth as separate defenses, with the view, apparently, of asserting (1) that the contract sued on never existed in that it was void for fraud in its inception; (2) or that defendant was entitled to the equitable relief of rescission or reformation of the written contract; or (3) that there was a valid independent contract on the part of the plaintiff to install the plant, the breach of which by plaintiff entitled defendant to recover damages by way of counterclaim.

Under the allegations of the answer the trial Judge permitted the defendant, over the plaintiff's objection, to introduce the following evidence: (1) Testimony of the defendant to the effect that the conditions of the contract upon which he had actually agreed with plaintiff's agent were that the plaintiff would furnish the lighting plant at a certain price, etc., and would also install the plant in his house for the additional sum of $35; that having

verbally agreed with the agent upon the terms and conditions of the contract, the agent prepared the written order, which defendant signed without reading, upon the representation of the agent that the order "covered everything" that no copy of the order was left with defendant, but that at the time of the signing of the order the plaintiff's agent left with him a memorandum in writing. (2) The memorandum in writing referred to, signed "T. G. Sexon, Agent," which correctly set out the prices and terms of payment of the outfit and in addition thereto contained the following: "Installing and furnishing pipe, etc., for 7 outlets, $35.00; terms cash; we also agree for installers to hang fixtures and put on burners where house is already piped." (3) Certain correspondence in the form of letters written by the parties, subsequent to the shipment of the goods.

At the conclusion of the introduction of evidence, the plaintiff moved to strike out all evidence adduced by defendant "with reference to any stipulation, or agreement, or representation" not contained in the written contract. The motion was granted. Thereupon plaintiff moved for a directed verdict, which motion was granted. The exceptions assign error in the foregoing rulings upon grounds which will be substantially covered in the following discussion.

If the written contract, the signing of which was admitted by defendant, was a valid contract, defendant was, of course, bound by the terms and conditions thereof. If bound by the written contract, it is entirely apparent that he was not entitled to introduce evidence to add to, vary, or contradict its provisions. That the evidence, including the memorandum in writing signed by the agent, offered by defendant to establish that plaintiff through its agent had agreed to install the lighting plant, was obnoxious to the parol or extrinsic evidence rule, in that it tended to add to, alter, and contradict the written contract, is not open to serious question. The written order, signed by defendant on May 13th, by its terms did not become effective as a contract until May 20th, when

it was accepted in writing by the plaintiff through one of its officers at its New York office. The alleged agreement with the sales agent as to installation was made prior to the date of the company's acceptance of the order, when the written contract upon which plaintiff here relies came into existence. The evidence offered to establish the installation agreement not only tended to change the force and effect of the written contract as consummated, by adding a material condition—a condition so material that defendant relied upon its absence from the written contract to avoid it—but also tended directly to contradict the express stipulations therein contained to the effect that the instrument covered "all the agreements between the purchaser and the company," and that no agent had made any verbal agreement "modifying or adding to the terms and conditions" therein set forth. *J. B. Colt Co. v. Freedman,* 124 S. C., 211; 117 S. E., 351. *J. B. Colt Co. v. Kinard* (S. C.), 119 S. E., 581. *J. B. Colt Co. v. Turlington,* 184 N. C., 137; 113 S. E., 600. *Armour Fertilizer Co. v. Hyman,* 120 S. C., 375; 113 S. E., 330; and see *Oxweld Acetylene Co. v. Davis,* 115 S. C., 426; 106 S. E., 157, and *Stalmaker v. Tolbert,* 121 S. C., 437; 114 S. E., 412. If, therefore, the written contract sued on was a valid contract which bound the defendant, there can be no question that the evidence offered and introduced by him to establish the extraneous installation agreement was properly stricken out by the trial Judge.

But if the written contract was not binding upon defendant, in that it was invalid for fraud in its inception or procurement, there was, from defendant's standpoint, no written contract and, of course, no basis for the application of the parol or extrinsic evidence rule. The point upon which the appeal turns, therefore, is whether there was sufficient evidence to require, either that the trial Judge held as a matter of law that the defendant was entitled to avoid the written contract for fraud in its procurement, or that the issue of fraud in this aspect of the case should have been submitted to the jury. It is clear that if the evi-

16—S. C. R., 129.

dence relied upon by defendant did not as a matter of law or equity justify a finding of fact that there was such fraud as would entitle defendant to avoid the written contract, there was no issue of fact properly determinable by the jury, and the Circuit Judge's ruling upon the motions to strike out the evidence and to direct a verdict was not erroneous. Broadly, therefore, the inquiry is whether the Circuit Judge erred in holding that the evidence adduced was not sufficient to warrant a finding of fact that the defendant was entitled to avoid the written contract for fraud.

That inquiry presents a problem for the solution of 3, 4 which it cannot be said that the law furnishes any satisfactory rule or formula. It involves the logical adjustment upon sound principle or principles of two distinct policies of the law. One is that no person should be permitted to found an enforceable right upon fraud; the other is that the public interests require that commercial transactions be safeguarded, negligence discouraged, and the opportunity for and temptation to prejury minimized, by attaching to a written contract a certain conclusive force or artificial sanctity as the memorial of the transaction it purports to evidence. As an outgrowth of the latter policy, we have the two familiar general rules: (1) That a written contract cannot be varied by parol or extrinsic evidence, and (2) that one cannot avoid a written contract into which he has entered on the ground that he did not attend to its terms, that he did not read the document which he signed, that he supposed it was different in its terms, or that it was a mere form. 13 C. J. 370, § 249. The latter rule obviously rests upon the basic premises that it is a duty owed by every contracting party to the other party and to the public to learn and know the contents of a written contract before he signs and delivers it. *Montgomery v. Scott,* 9 S. C., 43; 30 Am. Rep., 1. *Sloan v. Courtnay,* 54 S. C., 314, 344; 32 S. E., 431. *J. B. Colt Co. v. Freedman,* 124 S. C., 211; 117 S. E., 351, 353. *Upton v. Tribilock,* 91 U. S., 45; 23 L. Ed.,

203. *Chicago, etc., Ry. Co. v. Belliwith,* 83 Fed., 437; 28 C. C. A., 358. While in the case of *McKee v. Madden,* 116 S. C., 314; 108 S. E., 82, the particular charge there under review was held to involve a charge on the facts, that case is not to be construed as denying or disapproving the well-settled law above stated.

If the contracting party is in position to learn the contents of the paper and thus fully to protect himself by reading it or having it read, the applicable rule is thus stated in *Baldwin v. Cable Co.,* 78 S. C., 419, 422; 59 S. E., 67, 68:

"The rule is, a person who is unable to read is bound to have the paper read to him before signing, just as a person who can read is bound to read it before signing."

But as recognized in *Baldwin v. Cable Co., supra,* it is equally well settled that if the party who signs a written contract in ignorance of its contents without reading it or having it read is induced to sign by conduct of the other party which amounts to actionable fraud, this may give the signer the right to avoid the contract as against him on the ground of fraud. 13 C. J., 371, § 250. Up to this point the authorities are in substantial agreement.

But there is wide diversity of judicial opinion as to whether the plea of fraud in cases of this character may be soundly met and resisted upon the ground of negligence. 13 C. J., 372, § 250, and cases cited. Broadly, it may be said that one line of decisions is based upon the theory that negligence is not, and should not in sound morals constitute, a defense to the willful wrong which fraud implies and involves; the other view, upon the theory that neither the Courts of equity nor of law are bound to afford relief to a victim of fraud who has failed or refused to exercise reasonable diligence or discretion in the protection of his own interests. The rationale of this latter view is thus stated by Marshall, J., in *Standard Mfg. Co. v. Slot,* 121 Wis., 14, 24; 98 N. W., 923, 927; 105 Am. St. Rep., 1016, 1024:

"Where there is such inattention upon the one side and fraud upon the other, and but for the former feature the latter would not be effective, and loss occurs to the inexcusably negligent one, he is remediless; not because the wrongdoer can plead his own wrongdoing as an excuse for not making reparation, but, first, because the consequences are attributable to inexcusable inattention of the injured party; and second, because the Court will not protect those who, with full opportunity to do so, will not protect themselves."

Stated from another angle, the doctrine that one may be precluded by his own negligence from taking advantage of the fraud of another is embodied in the proposition, upheld by the weight of authority, that "ordinarily representations are not actionable unless the hearer was justified in relying thereon in the exercise of common prudence and diligence." 26 C. J., 1142, § 59; Cooley on Torts (2d Ed.) p. 570. The view that one guilty of inexcusable inattention to the protection of his own interests may be estopped to claim relief on the ground of fraud is impliedly, if not expressly, recognized and applied in a number of our own decisions, notably in the recent cases of *Oxweld Acetylene Co. v. Davis,* 115 S. C., 426, 432; 106 S. E., 157. *J. B. Colt Co. v. Freedman,* 124 S. C., 211; 117 S. E., 351; and *J. B. Colt Co. v. Kinard* (S. C.), 119 S. E., 581.

Conceding that there are serious difficulties in the way of testing the conduct of a defrauded person by the application of the standard prescribed to determine the existence of negligence, viz., the due care of the man of ordinary reason and prudence, since the victim of fraud may be not the less but the more entitled to relief because he is incapable of exercising the care of the man of ordinary sense and prudence, and granting that mere negligence or inadvertent failure to exercise due care, when such failure is induced by a fraudulent representation of the adversary, should not on principle debar the negligent party from asserting a right to relief on the ground of fraud,

nevertheless, if, under the facts of the particular case, the conduct of the party who pleads fraud may soundly be held to have amounted to a reckless or conscious disregard of his duty to avail himself of the opportunity and means at hand to protect his own interests, there would seem to be no valid reason for not applying the principle, recognized in this jurisdiction, that where one is injured by a willful wrong and his own willful or reckless misconduct has contributed to his injury as a proximate cause, he should not be permitted to recover.   See *Spillers v. Griffin,* 109 S. C., 78; 95 S. E., 133; note L. R. A., 1918D, 1195.   Whether or not reliance upon a representation in a particular case is justifiable or excusable, what constitutes reasonable prudence and diligence with respect to such reliance, and what conduct constitutes a reckless or conscious failure to exercise such prudence, will depend upon the various circumstances involved, such as the form and materiality of the representation, the respective intelligence, experience, age, and mental and physical condition of the parties, the relation and respective knowledge and means of knowledge of the parties, etc.   26 C. J., 1144, § 59.

In that view our inquiry here is: Was the defendant, in the circumstances of this particular case, guilty of such reckless or conscious disregard of his duty to protect his own interests by reading the contract, as should be held to preclude him from asserting a right to avoid the contract for fraud?   The defendant was a successful and experienced business man, in full possession of his faculties.   He was dealing at arm's length upon equal footing with a person he knew was an agent.   The law imposed on him the duty of exercising reasonable prudence to ascertain the nature and extent of the agent's authority.   21 R. C. L., 908, 909, §§ 85, 86.   He could have ascertained that the agent had no authority to make the contract to install the plant, that the condition as to installation was not included in the order, and could have rendered the alleged fraud

wholly ineffective and protected himself fully by a casual reading of the paper he signed. There was nothing about the relations between him and the agent to lull him into security. We are not here concerned with the case of a person who is illiterate, or blind, or ignorant of the alien language of the document, or unable intelligently to construe and interpret the technical terms of a writing, or who for any other cause is unable fully to safeguard his interests by reading the paper. The defendant's own explanatory version of his signing is substantially as follows: The reason why I did not read the paper is that "I was in a hurry, and he (the agent) told me it covered everything right there"; as to there being nothing to prevent me from reading it, "I thought the man was telling it straight and I was in a hurry", as to its being my "duty" to have read that contract, "I ought to have done it, but I did not take time to do it"; as to being "careless" about the matter, "I was a little too careless—I thought he was telling me what was all right." In the circumstances of this case we think the conclusion is irresistible, not only that the defendant owed the duty of reading the contract, but that in failing to read it he was guilty of reckless, if not a conscious, disregard of his duty in that regard. He shut his eyes and took a chance on a stranger acting in an adversary capacity, because, as he says, he was in a hurry. If in the circumstances indicated— parties standing upon an equal footing, absence of any confidential relationship, opportunity and means of investigation at hand, absence of any resort to trick or artifice other than a bald representation that the contract covered everything—one party to a written contract may be permitted to relieve himself of his duty to ascertain the contents of the instrument before signing upon the ground, in substance, that he delegated his duty in that regard to his adversary and relied upon his adversary's verbal representation as to what the contract contained, the law imposing the duty to read before signing, so essential to safeguarding the integrity of

written contracts, would be practically nullified. We are of the opinion the evidence is open to no other reasonable inference than that the defendant was guilty of inexcusable inattention, tantamount to a willful disregard of his duty to protect his own interests in the transaction, which proximately contributed to his injury, and that such misconduct should be held to preclude him from asserting a right to avoid the contract for fraud. See *J. B. Colt Co. v. Kinard, supra; J. B. Colt Co. v. Freedman, supra; Oxweld Acetylene Co. v. Davis, supra. Cape Fear Lumber Co. v. Matheson,* 69 S. C., 87; 48 S. E., 111. *Sloan v. Courtenay,* 54 S. C., 314, 344; 32 S. E., 431. *Montgomery v. Scott,* 9 S. C., 35; 30 Am. Rep., 1. *Grayson v. Ins. Co.,* 114 S. C., 130, 136; 103 S. E., 477. *Whitman v. S. A. L. Ry. Co.,* 107 S. C., 200, 204; 92 S. E., 861, L. R. A., 1917F, 717. *Ruberg v. Brown,* 50 S. C., 397; 27 S. E., 873. *Rupart v. Dunn,* 1 Rich., 105; 13 C. J. p. 372, and cases cited, note 34; note 138 Am. St. Rep., 810, 811, and authorities there collated.

It follows that the trial Judge committed no error in directing the verdict for the plaintiff. All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES WATTS, FRASER and COTHRAN concur.

MR. CHIEF JUSTICE GARY did not participate.