## 11832

### J. B. COLT COMPANY v. TYLER

#### (129 S. E., 213)

1. PRINCIPAL AND AGENT—AUTHORITY OF WRITER, AS AGENT, HELD INSUFFICIENTLY ESTABLISHED TO WARRANT RECEIPT IN EVIDENCE OF LETTERS MODIFYING WRITTEN CONTRACT.—In action on written contract for sale of lighting plant which provided that it could not be canceled, revoked, altered, or modified by any agent of the company, or in any manner except in writing between purchaser and officer of company, exclusive of letters written more than a year after execution of contract by one claiming to act for company *held* proper, since they had no tendency to show writer's authority.

2. SALES—DELIVERY TO CARRIER, UNDER PROPER SHIPMENT PAPERS, IS DELIVERY TO BUYER UNDER F. O. B. CONTRACT.—Seller's delivery of goods to carrier, under proper shipment papers, is delivery to buyer under contract providing for delivery f. o. b. seller's factory.

3. SALES—DIRECTED VERDICT FOR PLAINTIFF FOR FULL AMOUNT OF CLAIM IN ACTION ON CONTRACT FOR GOODS SOLD HELD ERROR.—In action on contract for sale of lighting plant, direction of verdict for plaintiff for full amount of recovery *held* erroneous, where evidence showed that part of goods had not been delivered with original shipment, that seller had requested buyer to send shipping papers, so that claim might be made against railroad and promised a duplicate shipment, receipt of which by buyer was not established.

Before F. P. McGOWAN, SPECIAL JUDGE, Orangeburg, 1924. Reversed.

Action by the J. B. Colt Co. against W. S. Tyler. Judgment for plaintiff and defendant appeals.

*Mr. John S. Bowman* for appellant.

*Messrs. Brantley & Zeigler* for respondent.

September 9, 1925.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Action upon a written contract for the sale of a Colt lighting plant to recover the agreed purchase price; the plaintiff alleging delivery in accordance with the contract and nonpayment by the defendant. The Circuit Judge directed a verdict for the plaintiff, and from judgment thereon the defendant appeals.

The answer admitted "the acceptance of the contract," but denied the receipt by defendant of the fixtures, appliances, etc., agreed to be delivered under the contract; alleged that "without same the lighting and cooking plant was worthless" and that defendant was in nowise indebted to the plaintiff, and set up a counterclaim for freight charges, costs of installation, and injury to defendant's dwelling in making preparation for installation, etc.

The exceptions assign error (1) in the exclusion of certain evidence offered by defendant, and (2) in the direction of the verdict for the plaintiff. The questions thus raised will be considered in the order stated.

First, as to the exclusion of evidence: The contract sued on was dated August 21, 1919, and appears to be identical with the written contract involved in the cases of *J. B. Colt Co. v. Fox,* 118 S. C., 372; 110 S. E., 401, in *J. B. Colt Co. v. Britt,* 129 S. C., 226; 123 S. E., 845, and in other similar cases recently considered by this Court. The contract contains no provision as to the installation of the plant by the J. B. Colt Company. See *J. B. Colt Co. v. Britt, supra.* It contains the stipulation that the contract "cannot be canceled or revoked by either party, nor may it be altered or modified by any agent of the company, or in any manner except by agreement in writing between the purchaser and the company acting by one of its officers." The evidence excluded consisted of testimony as to declarations of one C. R. King made in connection with the installation of the plant on defendant's premises, and of two letters purporting to have been written from Columbia, S. C., by King to the defendant in December, 1920, and January, 1921—more than a year after the execution of the contract sued on. The authority of King to represent or act for the plaintiff as an agent, whose declaration would bind the company, appears to be predicated upon the expressions contained in the letters, the form of the letter heads, etc. Even if the mere receipt by the defendant in due course of mail of letters not purporting to have been written in answer to any letters sent by defendant were sufficient to establish their authenticity for purposes of admission in evidence, and even if they had purported to have been written by an agent of the J. B. Colt Company —which is questionable—we think the learned trial Judge correctly held that they were inadmissible as evidence tending to show that King was such an agent as had any au-

thority to bind the plaintiff by his declarations upon any issue involved in the trial of this cause.   The evidence was therefore properly excluded.   See *Hopkins v. Smathers,* 114 S. C., 488; 104 S. E., 30.   *Sanders v. Barnwell Lumber Co.,* ·113 S. C., 499; 101 S. E., 860.   *Seneca Co. v. Crenshaw,* 89 S. C., 470; 71 S. E., 1081.   *J. B. Colt Co. v. Britt, supra.*

As to the direction of the verdict:   The record contains the statement that "it is admitted that the material called for by the contract was delivered to the transportation company at Chicago, consigned to appellant at Orangeburg, under proper shipment papers." In that state of the facts the defendant was liable for the contract price of the material, the delivery to the carrier being a delivery to the defendant under the terms of the contract.   *J. B. Colt Co. v. Fox, supra.    Oxweld Acetylene Co. v. Davis,* 115 S. C., 426; 106 S. E,. 157.

But the record contains further statements and admissions as to the evidential facts which are substantially as follows:   Under date of May 7, 1920, the plaintiff wrote defendant to the following effect:

"If the shortage still exists, kindly favor us with the freight bill covering shipment and have agent at destination place a notation thereon showing that this box of fixtures was not received.   We will then immediately make a duplicate shipment to you and file claim with the railroad company for the value of this loss."

At plaintiff's request, defendant sent to the plaintiff "freight bill covering notation of shortage on initial shipment made thereon and signed by the agent of the transportation company, together with the necessary shipping papers."   Plaintiff "then] filed claim with railroad company for the value of the lost material."   Defendant "offered testimony to show that on May 10, 1920, he notified" plaintiff "that on account of its failure to furnish missing parts" he had "elected to rescind the contract, and

that the generator and pipes must be removed from his premises," etc.  On June 2, 1920, the plaintiff wrote defendant as follows:

"Under date of May 10, you advised us that a box of fixtures belonging to the original shipment of your lighting plant had never been received.  Of course you are aware that all our shipments are made f. o. b. factory and we, therefore, are in no way responsible for a shortage of this kind.  However, as an accommodation to you, we have issued instructions to our factory at Newark, N. J., to forward to you by express prepaid a duplicate shipment of all fixtures on your order.  As it is our intention to file claim with the railroad company for the loss of the original box of fixtures, it will be necessary for us to have your paid freight bill or a copy of same with a notation of this shortage made thereon, signed by the agent."

Plaintiff adduced evidence to the effect that it "duplicated the shipment of materials which the defendant claimed to have been lost by the transportation company, and that no charge was made to the defendant for this duplicate shipment."  The defendant adduced evidence to establish that this duplicate shipment had "never been received by him" and neither had "he ever received any notice of same from any transportation company."  It is not admitted by defendant, so far as the record discloses, that this duplicate shipment was ever delivered by the plaintiff to a transportation company for shipment to the defendant.

From the foregoing, it is apparent that plaintiff in May, 1920, offered to waive its right to stand on the original contract and the delivery thereunder to the carrier, and to substitute for the original delivery of a part of the material covered by the contract a new shipment, subject to the defendant's turning over to it the necessary papers for a claim against the carrier on account of the material lost on the original shipment.  The defendant was not bound to accept that offer, made some 9 or 10 months after the original con-

tract was entered into. It appearing that there was some evidence to show that defendant had notified the plaintiff on May 10th after the date of plaintiff's offer to ship the new material, that he elected to rescind the contract, and that there was no admission on the part of defendant that the second shipment had been delivered, whether defendant did accept plaintiff's offer and whether, if accepted, the plaintiff complied by a delivery of the new material to the transportation company, are questions of fact which cannot be said to be conclusively settled, one way or the other, by the evidence set out in the record. If the plaintiff's offer, in effect, to substitute the new material for the old under the original contract was not accepted by defendant, then the plaintiff, standing upon the original delivery and leaving the new shipment entirely out of the reckoning, is in the position of having accepted from defendant the papers upon which to make claim, and of having filed claim against the carrier for the value of the material lost on the original shipment. Obviously, plaintiff is not entitled to collect for this lost material both from defendant and the transportation company. If defendant was not bound for the alleged new shipment under the terms of the original contract, the evidence is susceptible of the inference of fact that his liability for the amount due on the original contract, here sued on, is subject to credit for the value of the lost material which the plaintiff undertook to collect from the carrier. *Brooks v. Floyd,* 121 S. C., 357; 113 S. E., 490. Under the foregoing views, it follows that the direction of the verdict for plaintiff for the full amount claimed must be held erroneous.

The judgment of the Circuit Court is reversed, and a new trial ordered.

Reversed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and COTHRAN and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.