13552

FRIERSON v. INTER-OCEAN CASUALTY CO.

(167 S. E., 232)

*Mr. L. D. Jennings* for appellant.

*Messrs. Lee & Moise,* for respondent,

January 9, 1933.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, commenced in the Court of Common Pleas for Sumter County, August 4, 1931, is a suit by Hannah Frierson, as plaintiff, against the defendant, Inter-Ocean Casualty Company, for damages, based on allegations of fraud practiced upon the plaintiff by the defendant, it being alleged that the plaintiff purchased from the defendant a certain kind of policy on the life of her sister, Julia Sumter,

payable to the plaintiff as beneficiary, and that the defendant delivered to the plaintiff a different kind of policy from that purchased, which act the plaintiff alleges, in effect, was done by making misrepresentations with a fraudulent purpose and intent, and for this alleged wrong the plaintiff asked for damages, actual and punitive, in the sum of $2,950.00. By way of answer, the defendant interposed a general denial to all of the material allegations of the complaint, and, as a further defense, alleged that, in pursuance of an application made to the defendant the defendant issued and delivered to the plaintiff, on the life of her said sister, a policy commonly known as an "accident and health" policy. Issues being joined, the case was tried in the said Court at the Spring (1932) term, before his Honor, Judge W. H. Townsend, and a jury, resulting in an order. of nonsuit directed on motion of defendant's counsel, from which order the plaintiff has appealed to this Court.

Under the allegations of error imputed to the trial Judge, appellant presents three exceptions, but there is but one question involved in the appeal, and that is, whether there was sufficient evidence to take the case to the jury on the question of fraud alleged to have been practiced upon the plaintiff with reference to the policy in question. As we view the case, it would· serve no useful purpose to review at length the testimony in the case, and we shall, therefore, call attention only to that portion of the testimony we regard as having a direct bearing on the question under consideration.

It is the contention of appellant, as alleged in the complaint, that the agent of the defendant insurance company requested her to take out a policy of insurance on the life of her sister, Julia Sumter, and represented to the plaintiff that he could and would, acting as agent for the defendant, issue such policy at a cost of $1 per month, and in case of death from any cause the beneficiary would be paid the sum of $500, and that, relying upon these representations, be-

lieving the same to the true, the plaintiff paid to said agent of the defendant the first month's premium of $1, and signed an application for such policy, and the said agent agreed to have the defendant issue the said policy on the life of plaintiff's said sister, and deliver the same to plaintiff. In this connection plaintiff made the following further additional pertinent allegations:

"5. That about two weeks thereafter, the plaintiff received a policy from the defendant, being its policy No. 72838, and believing it to be the kind of policy which the defendant had sold to her, she put said policy up, and continued to pay the monthly premiums of One Dollar until her sister, Julia Sumter, died.

"6. That the said Julia Sumter died on or about June 23, 1930. That after the death of the said Julia Sumter, the plaintiff furnished proofs of her death to the defendant in accordance with the terms of said policy, but the defendant refused to pay to the plaintiff the Five Hundred Dollars which it had agreed to pay, and denied all liability under said policy, and denied that the plaintiff was entitled to Five Hundred Dollars, on account of the death of the said Julia Sumter, claiming that she would only be entitled to said Five Hundred Dollars if her death was caused by accident.

"7. That this was the first time that the plaintiff had any information that the defendant had delivered to her a different kind of policy from the one which she bought, and which the defendant had contracted to deliver to her.

"8. The plaintiff alleges that the defendant, in consideration of said One Dollar paid to it by the plaintiff, contracted to execute and deliver to the plaintiff a policy of insurance on the life of Julia Sumter, which, in case of her death from any cause, the defendant would be bound to pay to the plaintiff the sum of Five Hundred Dollars. The plaintiff alleges that the defendant fraudulently breached said contract by fraudulently substituting another policy in lieu

of the policy which it had sold to the plaintiff, and which it had contracted to deliver to her which substituted policy the defendant knew was not a contract binding it to pay to the plaintiff the sum of Five Hundred Dollars in case of the death of the said Julia Sumter, but on the contrary, the policy so substituted and delivered only binds the defendant to pay Five Hundred Dollars in case the death of the said Julia Sumter was the result of an accident."

As supporting the pertinent allegations above quoted, appellant calls attention to the following testimony adduced by the plaintiff at the trial:

"Q. What kind of policy did he tell you he wanted to sell you? A. He said he had a policy, I would pay $1.00 a month and it would give me $500.00.

"Q. That he was selling a policy for $1.00 a month, and it would give $500.00 for death from what cause? A. Any cause.    *    *    *

"Q. All right, what did the agent tell you? A. He said it paid $500.00 at death.

"The Court: You are sure he said that? A. Yes, sir.

"Q. And that is all he said? A. No, sir, he said lot about it.

"Q. What else did he say in reference to the death? A. I thought it was such good insurance that I took it.

"Q. Tell what he said leading you to take the policy? A. He told me it was a good policy and it would give $500.00 for death, with no trouble, all I had to do was have the money on the date it was due.    *    *    *

"Q. Did he say anything at all about accidental death? A. No, sir, he didn't tell me anything about it, and he didn't tell my sister-in-law anything about it.

"Q. She was present? A. Yes, sir.    *    *    *

"Q. What did he tell your sister-in-law? A. He said it was a good policy and she could get it for $1.00 a month.

"Q. Did you know anything about insurance policies? A. I never read one in my life.    *    *    *

"Q. Did he mention accidental death to you in trying to sell the policy? A. No, sir.

"Q. What kind of death did he mention? A. He just said for death.

"Q. What kind of policy did you think you were getting? A. I thought I was getting something very good. And was glad to receive it because after he told me I really thought it was something good.

"Q. Now, after you took the policy out how often did you pay the premiums? A. Once a month.

"Q. Had you paid all the premiums due at the time your sister died? A. Yes, sir, every one. I didn't owe them anything at her death.  *  *  *

"Q. You said Vermelle Willis was there when he first talked to you about the policy and was there when he delivered the policy? A. Yes, sir.

"Q. And you say she bought one? A. No, sir, she was so happy over it she bought two.

"Q. Where is she now? A. She is sick. She got one for her husband and one for his father, and paid them until after they didn't pay me, and then she stopped."

Under the well-recognized rule, for the purpose of passing upon the motion for a nonsuit, it was incumbent upon the trial Judge to regard the testimony in the most favorable light for the plaintiff; but even then, in our opinion, the trial Judge committed no error in granting the motion, for there appears in the record the following established facts: The appellant is possessed of intelligence, can read and write, signed the application for the insurance, that is, signed her said sister's name to the paper to procure insurance, received through the mail the policy so delivered by the defendant to her, and she kept the same in her possession for a period of about six months until the death of her said sister, Julia Sumter, and continued during said period of time to pay the monthly premium thereon. It is true, the policy delivered to the plaintiff did not pro-

vide for the payment of $500 to the beneficiary in case of death, from any cause, of the insured; but the policy so delivered showed on its face that the benefits provided thereunder were "accident benefits," and plaintiff had full and ample opportunity to learn this fact, and, having kept the policy and continued to pay the monthly premiums thereon, under the circumstances surrounding the case, in our opinion, the plaintiff should not be heard to complain that the insurance company practiced the alleged fraud upon her in not delivering to her the kind of policy she claims to have agreed to purchase. The evidence, in our opinion, did not warrant the trial Judge in submitting the case to the jury. As we view the evidence in the case, there was no actionable fraud, and we think his Honor, Judge Townsend, properly granted the nonsuit. In this connection attention is called to the following cases: *Colt Company v. Britt*, 129 S. C., 226, 123 S. E., 845; *Whitman v. Railway*, 107 S. C., 200, 92 S. E., 861, L. R. A., 1917F, 717.

The exceptions will, therefore, have to be overruled, and it is the judgment of this Court that the judgment of the Circuit Court be and is hereby affirmed.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE BONHAM, and M. M. MANN and G. DEWEY OXNER, Circuit Judges, concur.