14708

SOUBA v. LIFE INS. CO. OF VIRGINIA

(197 S. E., 826)

*Messrs. J. C. Long* and *O. T. Wallace,* for appellant,

*Messrs. Hagood, Rivers & Young,* for respondent,

June 27, 1938.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

On March 20, 1928, the defendant (respondent here) issued to Elmer Souba an insurance policy on his life, in the sum of $1,000.00, which provided for the payment of a premium of $14.89 semi-annually. Melvern Souba, a son of the insured by a former wife, was designated as beneficiary in the policy. In the same year that the policy was issued, the insured married Mamie Souba, the plaintiff in this action. This action was commenced by Mamie Souba against the respondent for damages, based upon fraud and deceit. The plaintiff (appellant here) alleged in brief that the respondent, through its agents, falsely represented to her that she had been substituted as beneficiary, and that relying upon these representations, she paid the last two premiums falling due prior to the death of her husband, the insured. While the policy was in force, the insured, Elmer Souba, died on August 15, 1933, following which the plaintiff learned that no change in the beneficiary had been made by the respondent. This action followed.

The case has a lengthy history, which entails a somewhat detailed examination of the facts.

The testimony for the plaintiff tends to show that Mr. Souba paid the first two semi-annual premiums, and then decided to let the policy lapse. In order to keep the policy in force, Mrs. Souba, who owned and operated a small country store at Ten Mile, on the Summerville highway, continued the payment of premiums from her own funds. Realizing, some time prior to October, 1932, that she was keeping alive a policy from which she could derive no benefit, it was agreed between her and Mr. Souba that the beneficiary should be changed so that in the event of his death his funeral expenses would be paid from the proceeds of the

policy. In pursuance of this agreement, he filed an application with the company, through its soliciting and collecting agent, H. L. Ridgeway, requesting that the beneficiary be changed to "funeral expenses and Melvern Souba." The policy accompanied the application for the purpose of having the change of beneficiary endorsed thereon. The company refused to make this change, because it was not willing to make "funeral expenses" a beneficiary.

Thereafter, and before the return of the policy, the plaintiff says that Elmer Souba signed another application, on the company's form, requesting that she be made sole beneficiary. The plaintiff and Mr. Ridgeway, the agent of the company who dealt with Mrs. Souba in this transaction, unite in testifying that this application was given to him, and the agent says that he turned it in to the Charleston office. The company disclaims any knowledge of this second application for a change of beneficiary, and denies that it has any record of ever having received it.

The policy was returned to Mrs. Souba on April 18, 1933, but shortly before this, Mr. Ridgeway, who also collected weekly premiums on industrial policies held by the plaintiff with the company, was transferred to another route. He was succeeded by a Mr. Smith, another agent of the respondent.

It is not disputed that Mr. Smith returned the policy to Mrs. Souba and collected from her the premium of $14.89 thereon on April 18, 1933, and gave her a receipt therefor. Mrs. Souba says that at the time the policy was returned to her, two letters, folded in it, were handed to her by Smith. One was a letter from the home office addressed to the District Manager, dated April 17, 1933, reading as follows:

"The Life Insurance Company of Virginia

"Organized 1871

"Home Office

"Richmond, Virginia

"April 17, 1933.

"In Re: Policy 159 594—Souba

"Mr. J. V. Murray, District Manager, Charleston, S. C.

"Dear Sir: As requested in your letter of April 14th, we are returning Form 629 and the policy herewith.

"Yours truly,

"ER/fw                                                                      Actuary."

"Enc.

The other letter, signed by H. L. Ridgeway, dated April 18, 1933, reads as follows:

"The Life Insurance Company of Virginia,
"Home Office: Richmond, Va.
"Office of District Manager at . . . . . . . . . . .

"April 18th, 1933.

"Dear Mrs. Souba: I am returning the policy by Mr. Smith as he now has charge of your part of my route; The Company has changed the policy and made you the beneficiary on its records as desired by you and Mr. Souba, so it is now all right to pay the premiums to Mr. Smith your new agent. I am glad that the company has finally straightened this matter out.

"Yours truly,

"H. L. RIDGEWAY."

According to the plaintiff, when the policy was delivered to her, she examined it, and called the attention of Mr. Smith, the agent, to the fact that the beneficiary was unchanged, and that her name did not appear on the policy as beneficiary; whereupon, Mr. Smith told her, "Everything was all right; that it had been changed in the office." She says that she believed his statement and relied upon the letter from Mr. Ridgeway which accompanied the policy, and, upon the faith of Smith's oral statement and the letter from Ridgeway she paid the premium. Smith in his testimony denies that he either told Mrs. Souba that she was the beneficiary, or that he handed her the Ridgeway letter. He disclaimed any knowledge of the Ridgeway letter. The agent, Ridgeway, testified that he did not examine the policy to discover if the beneficiary had been changed. He said that

in writing the letter, he merely assumed that the change had been effected. The insurance company has launched a serious attack upon the genuineness of this letter. We shall advert to this later.

This action was brought in the Civil and Criminal Court of Charleston County, and was tried before Honorable Paul M. MacMillan and a jury on May 6, 1936, resulting in a verdict for the plaintiff for actual and punitive damages. Thereafter the defendant moved for a new trial upon after-discovered evidence, such evidence tending to show that the Ridgeway letter of April 18, 1933, to which we have referred, could not have been written on its purported date, but was written subsequent to that date. In support of this contention the respondent made a showing that the plates from which this stationery was printed were not in existence until after 1933. We should state here that this letter was written upon a letterhead furnished to its agents by the insurance company, but it appears that the upper portion of the letterhead, which contained the names of the officers of the company, had been torn away.

The defendant contended before the Civil and Criminal Court on its motion for a new trial, and contends here, that the letter was a mutilated document, from which the name of Robert Henley, vice-president, had been torn; that Henley had not been elected vice-president of the company until September, 1934; that the metal plate from which the letterhead was multigraphed had not been manufactured and delivered to the insurance company until January, 1935, and that it therefore followed that the letter in question could not have been written when it was dated, on April 18, 1933.

The motion for a new trial was granted, and the cause was then retried on December 3, 1936, and resulted in a verdict for the plaintiff for the sum of $14.89, actual damages, and $500.00, punitive damages.

Thereafter, the company again moved for a new trial, which was refused by the Judge of the Civil and Criminal Court of Charleston County. An appeal was taken by the

respondent to the Court of Common Pleas, and that Court reversed the trial Court, held that the respondent's motion for a directed verdict should have been granted, and ordered that a verdict and judgment for the defendant be entered.

The plaintiff prosecutes this appeal from this latter order.

The Circuit Court order is based upon the undisputed testimony, which is referred to therein, to the effect that the plaintiff, when the policy of insurance was returned to her, read it; knew that she was not the named beneficiary therein, and was therefore not deceived. In support of this holding, adverse to the plaintiff, reliance is placed upon the following cases: *Hood v. Life & Cas. Ins. Co. of Tenn.*, 173 S. C., 139, 175 S. E., 76, and *Frierson v. Inter-Ocean Cas. Co.*, 168 S. C., 178, 167 S. E., 232. Upon the strength of these cases as applied to the stated testimony, the Circuit Court decided that the Civil and Criminal Court of Charleston County committed error in refusing the motions made by the defendant for a nonsuit, for a directed verdict and for a new trial, and held that a verdict, as already stated, should have been directed for the defendant, upon the ground that the plaintiff failed to establish a cause of action for fraud.

We have carefully examined the cases referred to in the Circuit order, and have reached the conclusion that they are controlling here.

. In *Hood v. Life & Casualty Ins. Co., supra,* an action was brought for damages, based upon fraud and deceit, by the beneficiary of a policy. It there appeared that the agent of the insurance company told the beneficiary that the health and accident policy issued to her brother, in which she was the beneficiary, covered every kind of accident. The brother was accidentally drowned, and she discovered that the policy did not cover accidental death from drowning. This Court, reversing a judgment in favor of the plaintiff in that case, held that even if the agent made the statement concerning the policy, which the plaintiff claims he made, there was no actionable fraud, for the reason that she failed to take advantage of the means afforded her to learn the truth as to

what the policy contained. From the facts in that case, it appeared that from the time of the alleged fraudulent representation of the agent until the death of her brother, which occurred more than a year later, the plaintiff had ample opportunity to read the policy.

In *Frierson v. Inter-Ocean Casualty Co., supra,* the plaintiff, a woman of limited education, who was named as beneficiary in a policy issued upon the life of her sister, failed to read the policy, which was kept in her possession for six months. She contended that the company through its agent stated to her that the policy provided for payment of benefits in case of death "from any cause", whereas it turned out that the policy provided for "accident benefits" only. The Court held that in the circumstances stated, even if the insurance company practiced the alleged fraud upon her, there was no actionable fraud, for the reason that she had failed to take advantage of the opportunity given her to inspect the policy, and to learn the truth as to its provisions.

The plaintiff here was not negligent, as in the *Hood* and *Frierson cases,* in failing to read the provisions of the policy; she was guilty of a more serious negligence. She says she read it in the presence of Mr. Smith, and fully understood that her name did not appear in it as beneficiary. Knowing this from the printed policy, and with exact knowledge of the policy requirements relating to a change of beneficiary, she kept the policy in her possession for four months without making any inquiry at the Charleston office of the respondent, although she lived within ten miles of that office.

Did the conduct of the plaintiff, under the circumstances narrated, amount to a conscious or reckless disregard of her duty to avail herself of the opportunity and means at hand to protect her own interests?

"It has been repeatedly held by this Court that it is the duty of a person to read his contracts, and that, if he cannot read, he should get someone to read them for him. But in the case of *J. B. Colt Company v. Britt,* 129 S. C., 226, 123 S. E., 845, 848, this Court also said: 'But

as recognized in *Baldwin v. Cable Co.*, 78 S. C., 419, 59 S. E., 67, *supra,* it is equally well settled that if the party who signs a written contract in ignorance of its contents without reading it or having it read is induced to sign by conduct of the other party which amounts to actionable fraud, this may give the signer the right to avoid the contract as against him on the ground of fraud. 13 C. J., 371, § 250.' See, also, *Continental Jewelry Company v. Kerhulas,* 136 S. C., 496, 134 S. E., 505; *General Motors Acceptance Corp. v. White-head,* 163 S. C., 236, 161 S. E., 494; *Southern Iron & Equipment Company v. Railway Company,* 151 S. C., 506, 149 S. E., 271." *Crosby v. Metropolitan Life Ins. Co.,* 167 S. C., 255, 166 S. E., 266, 268.

In *J. B. Colt Co. v. Britt, supra,* the Court had under consideration the question, whether the Circuit Judge erred in holding that the evidence adduced was not sufficient to warrant a finding of fact that the defendant was entitled to avoid the written contract for fraud. After quoting with approval the rule announced in the *Baldwin case, supra,* this observation was made (page 848):

" 'But there is wide diversity of judicial opinion as to whether the plea of fraud in cases of this character may be soundly met and resisted upon the ground of negligence. 13 C. J., 372, § 250, and cases cited. Broadly, it may be said that one line of decisions is based upon the theory that negligence is not, and should not in sound morals constitute, a defense to the willful wrong which fraud implies and involves; the other view, upon the theory that neither the courts of equity nor of law are bound to afford relief to a victim of fraud who has failed or refused to exercise reasonable diligence or discretion in the protection of his own interests.' "

In the same opinion it was declared: "If, under the facts of the particular case, the conduct of the party who pleads fraud may soundly be held to have amounted to a reckless or conscious disregard of his duty to avail himself of the opportunity and means at hand to protect his own interests,

there would seem to be no valid reason for not applying the principle, recognized in this jurisdiction, that where one is injured by a willful wrong and his own willful or reckless misconduct has contributed to his injury as a proximate cause, he should not be permitted to recover."

And also: "Whether or not reliance upon a representation in a particular case is justifiable or excusable, what constitutes reasonable prudence and diligence with respect to such reliance, and what conduct constitutes a reckless or conscious failure to exercise such prudence, will depend upon the various circumstances involved, such as the form and materiality of the representation, the respective intelligence, experience, age, and mental and physical condition of the parties, the relation and respective knowledge and means of knowledge of the parties, etc. 26 C. J., 1114, § 59."

The foregoing excerpts were also quoted with approval in *Hood v. Life & Casualty Ins. Co., supra*.

In the case at bar, the appellant had full notice from the policy itself that she was not named therein as beneficiary. And it is entirely clear from this history of the whole matter that she knew, or certainly had reason to know, that she could not take as beneficiary unless she was so designated in the policy. The glaring and inescapable fact confronted her from the written contract, that the change of beneficiary had not been accomplished. Despite this, during the intervening period of four months before the death of Mr. Souba, she did nothing to protect her interests, although revealing knowledge lay only ten miles away, in the Charleston office.

In our opinion, under the facts of this case, the conduct of the plaintiff may soundly be held to have amounted to a reckless or conscious disregard of her duty to avail herself of the opportunity and means at hand to safeguard her interests.

Even if the agents made the statements, oral and written, concerning the change of beneficiary which the plaintiff asserts they made, there was no actionable fraud, for the

reason that she failed to take advantage of the opportunity and means afforded her of learning the truth.

We find no error in the judgment of the lower Court which directs that judgment be entered for the respondent.

It is urged upon us by the respondent that we should hold as a matter of law that the Ridgeway letter is spurious and antedated, and it presents as an additional ground upon which to sustain the Circuit decree that the only reasonable inference to be drawn from the testimony is that the mutilated letterhead (Ridgeway letter dated April 18, 1933), was multigraphed from a plate which was not manufactured until 1935, and for that reason could not have been in the possession of the plaintiff in 1933. It does not appear by whom or when the strip was torn from the top of the letterhead. Ridgeway said that he did not tear it off, and did not know if it was off when he wrote the letter. The plaintiff testified that she did not know of the missing part until it was called to her attention on the second trial.

The evidence on behalf of the respondent, which included the testimony of an expert upon questioned documents, cast grave suspicion upon the genuineness of the date of this letter. On the other hand, the plaintiff, and her two daughters by a former marriage, testified that this letter was delivered to the plaintiff on April 18, 1933, along with the policy. The agent, Ridgeway, testified that he wrote the letter on that date, and two stenographers in the office of plaintiff's attorneys testified that they had made copies of the letter in 1934.

Where there is a direct conflict between witnesses concerning a material fact, it is not for us to determine the question of their comparative credibility. That is the province of the jury alone, and we are not authorized to disturb the finding, simply because our minds are inclined to the opposite conclusion. These remarks are more than ordinarily pertinent to a record such as we have before us. There is an irreconcilable conflict in the testimony, and the finding of

the jury as to the truth of the disputed matter must necessarily control. For the reasons given, the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER and MR. ACTING ASSOCIATE JUSTICE WILLIAM H. GRIMBALL, concur.

MR. JUSTICE CARTER did not participate on account of illness.