16903

TALLEVAST *ET AL.* v. HERZOG *ET AL.*
(83 S. E. (2d) 204)

564

*Messrs. Epps & Hoffman,* of Conway, for *Appellants,* 

*Messrs. Suggs & McCutcheon,* of Conway, for *Respondents,*

August 10, 1954.

LITTLEJOHN, Acting Associate Justice.

This action was commenced in the Court of Common Pleas for Horry County by service of the summons and complaint on August 10, 1950, and, in it, the plaintiffs sought judgment upon four notes, each dated January 26, 1950, and each in the principal sum of $1,250, given by the defendants as part payment for the purchase price for a mercantile business, in the City of Conway, purchased by the defendants from H. W. Tallevast, P. H. Byrd and John E. Coles. Mr. Coles died after the giving of the notes and his interest was represented by Mrs. Winnie H. Coles, the duly appointed administratrix of his estate.

The complaint also sought foreclosure of a chattel mortgage given at the time of the purchase, covering the stock of goods and fixtures in the store, and securing the payment of the notes, and contained a cause of action in claim and delivery seeking the possession of the said chattels.

The defendants answered, admitting the allegations of the complaint, but set up by way of avoidance, setoff and counterclaim, charges of fraud and deceit against the plaintiffs, which the defendants alleged voided the obligations sued on, and entitled the defendants to a verdict for damages on a

counterclaim. The alleged fraud being in failure to convey a Firestone store franchise.

At the end of all the testimony the trial court directed a verdict for the plaintiffs. The grounds upon which the motion was granted are reflected in the questions as stated by respondents for this appeal in their brief as follows:

I. Did the defendants' evidence establish a case of actionable fraud warranting the submission of the same to the jury? (Exception 1.)

II. Did the trial court commit error in directing a verdict for plaintiffs upon the ground that defendants failed to use reasonable prudence and diligence for their own protection? (Exceptions 2 and 3.)

Cases requiring the trial court to submit questions of fact to the jury if there is a scintilla of evidence are legion in this Court and need no citation. Under such rule the issues for determination in this appeal are:

Is there a scintilla of evidence from which a reasonable inference may be drawn, (1) that plaintiffs were guilty of actionable fraud, and (2) that defendants used reasonable care, prudence and diligence for their own protection?

The plaintiffs, owners and operators of a store at Conway, caused to be inserted in a New York newspaper in October 1949, an advertisement as follows:

"Business for sale—Firestone Home & Auto Supply Store for sale with Kelvinator and Duo Therm Franchise. Old established business located 11 miles from the most popular seashore resort on the East Coast, in the heart of the richest farming section of S. C., in the town of Conway (county seat); population 14,000 with a 50 miles trading radius. Incomes from farming alone average 15 to 18 million dollars per year, besides income from several small industries. Ideal winter and summer climate. Owner retiring. If interested, call, wire or write Harry Tallevast, Myrtle Beach, S. C."

The defendants, residents of New Jersey, where they operated a ten cents store, read the advertisement and after

some correspondence, came to Conway in December to discuss a purchase and sale. A sale was not then consummated but later they returned and entered into an agreement agreeing to pay $3,800 for the store fixtures, 100 cents on the dollar for accounts receivable ($5,962.85) and for all merchandise at wholesale cost ($13,338.18). When the agreement was reached the following receipt evidenced the transaction:

"Received of Irving Herzog the sum of One Thousand and no-100 ($1,000) Dollars as a binder or deposit on the purchase by Irving Herzog from the undersigned of the business operated by the undersigned as *Firestone Home and Auto Supplies,* the said business including accounts receivable, physical inventory, fixtures, *trade name* and good will. The balance of the purchase price to be paid on or before January 25, 1950, at which date the sale is to be completed. Upon payment of the purchase price the undersigned agree to sell and transfer all of their right, title and interest in the said business to Irving Herzog by proper instrument, free and clear of all indebtedness.

"Dated at Conway, South Carolina, this 5th day of January, 1950.

"H. W. Tallevast

"P. H. Byrd

"Doing business as *Firestone Home and Auto Supplies, Inc.*" (Emphasis added.)

The defendants returned to New Jersey to close out their business there and returned about three weeks later paying $14,852.37 in addition to the $1,000 referred to above in cash, and gave the plaintiffs five notes for $7,000, the first being for $2,000, and the remaining four for $1,250 each, the last four being the ones sued on in this action. The first was paid in April 1950 without contest; the four were not paid.

Pertinent portions of the bill of sale and agreement dated January 26, 1950, are here quoted:

"This Agreement made and entered into the 26th day of January, 1950, by and between H. W. Tallevast, John E. Coles, and P. H. Byrd, partners, doing business as *Firestone*

*Home and Auto Supplies* and as Tallevast and Coles, parties of the first part and Irving Herzog and Rose Herzog, parties of the second part.

"* * * the parties of the first part do covenant and agree to sell and convey, transfer and deliver and set over to the parties of the second part all of the right, title and interest of the parties of the first in and to the Partnership business operated by the parties of the first part under the name and style of Firestone Home and Auto Supplies, * * * together with the good will and trade name 'Firestone Home and Auto Supplies.'

"* * * All of the right, title and interest of H. W. Tallevast, J. E. Coles and P. H. Byrd, partners doing business as Firestone Home and Auto Supplies and as Tallevast and Coles in and to the partnership business and the assets of Firestone Home and Auto Supplies and Tallevast and Coles, including, but not limited to furniture, fixtures, equipment and outdoor signs, accounts receivable as of the close of business January 25, 1950, physical inventory of goods and merchandise as of the close of business on January 25, 1950, good will and the trade name 'Firestone Home and Auto Supplies.'

"* * * And the undersigned do hereby warrant that they are the owners of the above described property, and that they have the right to sell and convey the same."

The plaintiffs could not sell and did not convey the Firestone franchise and trade name, nor the Kelvinator franchise, nor the Duo Therm franchise, however, the defendants obtained the latter two franchises in their own right. The Firestone franchise was denied them and per a previous commitment of the Firestone Company, was assigned to a competitor store in Conway. It also developed that a large "Firestone" sign on the building did not belong to the sellers and could not by them be conveyed though included in the agreement above.

In addition to the representations expressly and or impliedly made in the written instruments quoted hereinabove,

Mrs. Rose Herzog testified that Mr. Tallevast stated that they were charging 100 cents on the dollar of the accounts receivable because they were also getting a Firestone agency. The franchise held by the plaintiffs undisputedly contained a provision, as follows:

"It may not be assigned or transferred."

The necessary elements in actions involving actionable fraud are correctly stated in respondents' brief from the case of *Flowers v. Price,* 190 S. C. 392, 3 S. E. (2d) 38, 39, as follows:

"* * * the elements of actionable fraud consist of: (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) his intent that it should be acted upon by the person; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury."

In this case the burden of proving all of the foregoing elements is upon the defendants, and failure to prove any one of them is fatal to recovery. Counsel for the plaintiffs-respondents urge that there is absence of any evidence to go to the jury on the 8th and 9th elements, contending that this transaction was carried on at arms length between parties who had been strangers up until the time negotiations began.

This case involves basically a failure of title. The evidence is susceptible of the inference that the plaintiffs offered for sale and received money for a franchise which they obviously could not sell under the terms of an agreement by which they were bound, the terms of which they obviously knew. Normally, in the absence of some unusual circumstance, the buyer has the right to rely upon the expressed or implied representations by the seller that the seller can convey that which he offers for sale. This is not a case where opinions, puffing, future events, or indefinite and extravagant assertions are involved.

Whether or not the purchasers had the right to rely upon the representations made by the sellers in this case was a question of fact for determination by the jury and not one of law for a determination by the trial judge.

"The buyer has a right to rely upon the seller's representations as to matters which are peculiarly within the latters knowledge and of which the buyer is ignorant, and the failure of the buyer to investigate the facts, although he has an opportunity to do so, does not in such a case preclude him from asserting as against the seller the latter's misrepresentations with respect to such matters. In order for the buyer to be justified in relying upon the seller's representations, it is not required that the matter represented be exclusively within the knowledge of the seller; all that is necessary is that the latter have a peculiar knowledge thereof." 46 American Jurisprudence 289, Sec. 100.

In the case of *Thomas v. American Workmen,* 197 S. C. 178, 14 S. E. (2d) 886, 888, 136 A. L. R. 1, this Court held:

"Whether or not reliance upon a representation in a particular case is justifiable or excusable, what constitutes reasonable prudence and diligence with respect to such reliance, and what conduct constitutes a reckless or conscious failure to exercise such prudence, will depend upon the various circumstances involved, such as the firm and materiality of the representations, the respective intelligence, experince, age, and mental and physical condition of the parties, and the relation and respective knowledge and means of knowledge of the parties. *Souba v. Life Insurance Co. of Virginia,* 187 S. C. 311, 197 S. E. 826; *Hood v. Life & Casualty Insurance Co. of Tennessee,* 173 S. C. 139, 175 S. E. 76; *Crosby v. Metropolitan Life Insurance Co.,* 167 S. C. 255, 166 S. E. 266; *J. B. Colt Co. v. Britt,* 129 S. C. 226, 123 S. E. 845; *Baldwin v. Postal Telegraph Cable Co.,* 78 S. C. 419, 59 S. E. 67."

Plaintiffs' counsel further argue that the defendants have submitted no evidence of injury and damages as contemplated by element No. 9 cited hereinabove. Obviously this contention is untenable. One cannot read the entire record in this case without concluding that the Firestone franchise is a valuable asset. One owning a franchise has the benefit of national advertisements in magazines, radio, television, and other media. Its true value is somewhat evidenced by the fact that the original advertisement prepared by the plaintiffs placed the word "Firestone" at the head of the advertisement. In addition, the defendants were deprived of the Firestone sign on the front of the store, and it is in the testimony that the plaintiffs assured the defendants that the franchise was worth $10,000. Certainly this makes a jury issue.

The second and remaining question submitted in this case involves whether or not the defendants were guilty of such negligence as would preclude their recovery. The trial court held as a matter of law that the whole of the testimony is susceptible of no other reasonable inference than that the defendants' negligence precluded recovery. We do not agree. The evidence certainly creates an inference that the plaintiffs well knew that they could not convey that which they purported to convey, and that the defendants knew little or nothing about the handling of franchises. We are not called upon to say whether under any circumstances a buyer's conduct may be such as to preclude his assertion of fraudulent misrepresentation by the seller as to the latter's right to convey the property. Suffice it to say that we conclude that the evidence here is susceptible of more than one inference on the issues of fraud on the part of the plaintiffs and of negligence on the part of the defendants. Cf. *McKinley Music Co. v. Glymph*, 100 S. C. 200, 84 S. E. 715. The factual issues thus made should have been submitted to the jury.

Judgment reversed and case remanded for a new trial.

STUKES, TAYLOR, OXNER and LEGGE, JJ., concur.