17290

In re ESTATE OF O. B. NETTLES, Respondent-Appellant
In re SHEPARD K. NASH, As Attorney, Petitioner-Respondent
(97 S. E. (2d) 897)

*Messrs. Weinberg & Weinberg,* of Sumter, *for Appellant.*

*Messrs. Nash & Wilson,* of Sumter, *for Respondent,*

May 9, 1957.

LEGGE, Justice.

The Court of Common Pleas for Sumter County reversed an order of the Probate Court denying respondent's petition for the appointment of an administrator d. b. n. of the estate of O. B. Nettles; and decedent's widow appeals.

O. B. Nettles died intestate on October 17, 1954, and his widow, Marie C. Nettles, was appointed administratrix of his estate. On February 11, 1956, she filed in the Probate Court of Sumter County her final account and application for discharge, on which the usual citation was issued and published, returnable on March 12, 1956; on May 26, 1956, an amended final account was filed; and she was discharged on May 29, 1956. Thereafter Shepard K. Nash, as attorney and agent for Peerless Insurance Company of Keene, N. H., and for The Underwriters at Lloyd's, London, filed in the Probate Court a petition praying that letters of administration d. b. n. be issued to J. C. Gathright, a citizen of Sumter County, unless the widow or the daughter of the said decedent should wish to be, and be forthwith, so appointed. The petition alleged in substance:

That on or about June 4, 1956, the petitioner, acting for the two companies before mentioned, learned and determined from information obtained from one C. D. Cooper, Jr., and from the records of the National Bank of South Carolina of Sumter, S. C., and from other sources, that C. D. Cooper, Jr., and O. B. Nettles had embezzled $608,500.00 of the funds of said bank;

That subsequent to this discovery the said companies, sureties on fidelity bonds covering such defalcation, had made good the bank's loss (Peerless paying $200,000.00, and Lloyd's $408,500.00) and had taken from the bank assignments of whatever rights it might have against the said C. D. Cooper, Jr. and the said O. B. Nettles or his estate; and

That, Nettles' administratrix having been discharged, there should be appointed an administrator d. b. n. against whom action might be brought for the recovery of such amount as might be found to be due said bonding companies by his estate.

To this petition Marie C. Nettles made return, in which she alleged: that, while her application for discharge as administratrix was pending, her attorney had asked the two

representatives of the said bonding companies, who had come to Sumter to investigate the shortage, if there was any reason why her discharge should be held up; that both of them had consented to the discharge being granted; and that the companies were thereby estopped to request the appointment of an administrator d. b. n.

The facts are not in dispute. On May 19, 1956, an audit of the bank revealed a shortage. Two days later, C. D. Cooper, Jr., the cashier, confessed to embezzlement and implicated O. B. Nettles, who had been teller and assistant cashier, and who had died, as before stated, on October 17, 1954. Shortly after May 19, 1956, Mr. Peelington, an attorney of the home office of Peerless, and Mr. Nork, an agent of Lloyd's, came to Sumter to investigate; and they inspected the record of the administration of Nettles' estate in the Probate Court. Counsel for the adminisratrix discussed with them the pending discharge, and they orally consented to it. The audit of the bank was not completed until June 4, 1956; and upon its completion the two bonding companies paid the loss as before stated, taking from the bank the assignments by way of subrogation of its claims against Cooper and the estate of Nettles.

Upon these facts the Probate Court found that the bonding companies had waived, and were estopped to assert, their claim for appointment of an administrator d. b. n. We are in accord with the Circuit Court's ruling that the facts do not support either waiver or estoppel. We observe, as did the Circuit Judge, that at the time when, a few days prior to the discharge of the administratrix, the representatives of the bonding companies were in Sumter, these companies had no claim against the estate of Nettles; that there was nothing to connect Nettles with the shortage except the uncorroborated statement of Cooper, a confessed embezzler; that the bank's books were in process of audit; and that the amount of the shortage had not been determined. It is to be borne in mind, too, that assertion of a claim against the estate of Nettles by either the bank or the bond-

ing companies would have necessarily involved a serious charge of criminal conduct on the part of the decedent. In these circumstances, discretion and reason fully justified the action of the bonding companies' representatives in refusing to object to the discharge of the administratrix.

What rights, if any, the bonding companies had or might have against the estate were not at that time determinable with reasonable assurance or certainty; and consequently neither the failure of their representatives to oppose the discharge, nor their oral "consent" to such discharge, effected that voluntary and intentional relinquishment of a known right which is the essence of waiver.

Nor does such conduct of these representatives support a finding of equitable estoppel, the essential elements of which are: (1) lack, on the part of the one claiming estoppel, of knowledge and the means of knowledge of the truth as to the facts and circumstances upon which the claim of estoppel is predicated; (2) conduct, representations or silence of the party estopped, amounting to misrepresentation or concealment of facts; (3) reliance upon such conduct, representations or silence; and (4) resulting action, to his detriment, by the party claiming the estoppel. *Hubbard v. Beverly,* 197 S. C. 476, 15 S. E. (2d) 740, 135 A. L. R. 1206.

Appellant urges that the bonding companies, as subrogees of the bank, can have no higher right than their subrogor, and are therefore barred by the bank's failure to object to the discharge. But there is no suggestion in the record that prior to the completion of the audit on June 4, 1956, the bank knew with any greater certainty than the bonding companies what right it or they might have against the estate of the decedent.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.