17408

Allahree P. WARD, as the duly qualified and acting administratrix of the Estate of James Alvin Ward, deceased, Appellant, LIBERTY LIFE INSURANCE COMPANY and Greer Federal Savings and Loan Association of Greer, S. C., Respondents.

(103 S. E. (2d) 48)

*Messrs. Johnson & Smith,* of Spartanburg, *for Appellant,*

584

*Messrs. Sam R. Watt* and *T. Emmet Walsh,* of Spartan-
burg, and *Ansel Hawkins,* of Greer, *for Respondents,*

April 2, 1958.

Legge, Justice.

Action for damages for fraudulent breach of an alleged
undertaking by the defendants to procure and put in force
a policy of insurance on the life of plaintiff's intestate. Plain-
tiff appeals from an order of nonsuit.

On July 1, 1954, James A. Ward, now deceased, and his
wife (who, as administratrix of his estate, is appellant here)

executed and delivered to Greer Federal Savings and Loan Association their note in the principal amount of $3,425.00, bearing interest at the rate of six per cent per annum, and payable, both principal and interest, in monthly instalments of $28.91 commencing August 1, 1954, said instalments to be applied first to payment of interest and then to payment of principal. The note was secured by mortgage of their home, executed and delivered contemporaneously. As part of the same transaction Mr. and Mrs. Ward agreed to pay to the Association monthly, in addition to the installments on their note before mentioned, the sum of $3.05, to be held by the Association in an "escrow account" for the purpose of payment by it of taxes and premiums for insurance as and when they should become due. Mr. and Mrs. Ward were given a "Loan Account" book, in which were entered each monthly payment of $28.91, the amount of that payment applied to interest, and the balance of principal then remaining. They were also given an "Escrow Account" card, on which were entered the monthly escrow payments and the payments made from that account for taxes and insurance.

The loan note contained, among others, the following provision: "The said Association may at any time require the issuance and maintenance of insurance upon the life of any person obligated hereunder in a sum sufficient to pay this debt, with the Association as beneficiary, and, if the premiums are not otherwise paid, the Association may pay said premiums and any amount so paid shall become a part of the principal sum due under this note".

On May 19, 1955, Mr. Ward made application to Liberty Life Insurance Company for a "decreasing term" policy of insurance on his life, naming Greer Federal Savings and Loan Association as the beneficiary, for the purpose of insuring payment of the balance of the loan in the event that he should die while any part of the loan was outstanding. Application for this policy was made through Mr. D. S. Robinson, who was the Secretary and Treasurer of Greer Federal Savings and Loan Association and also a licensed

agent of Liberty Life Insurance Company. No premium was paid with the application, nor did the application state what the amount of the initial premium would be. It appears that in this type of policy the coverage, which initially is in the amount of the loan to be secured by it, diminishes as the loan obligation is reduced; and that the monthly premiums are likewise reduced during the life of the policy. The application which was signed by Mr. Ward, contained the following statements:

"17. I hereby declare and agree * * * (3) that there shall be no liability hereunder unless during my lifetime and good health a policy is issued by the Company, received by me, and the full first premium paid thereon, and the liability of the Company hereunder shall be only as provided therein; (4) that if plan of insurance applied for is 'Decreasing Term', the institution specified under No. 14 above is hereby designated as the Beneficiary to receive the proceeds of any policy issued in consequence of this application, such designation of Beneficiary to be irrevocable except with the written consent of said Beneficiary * * *."

Under date June 2, 1955, the Medical Department of Liberty Life Insurance Company wrote Mr. Ward requesting that he have a physician examine him and complete the medical report required in connection with his application. On June 7, Mr. Ward's physician completed his examination and report; and the report was received at the company's home office in Greenville on June 16. The policy was prepared under date July 1 and forwarded by the home office to Mr. Robinson. It contained, among others, the following provision: "Date Effective. This policy shall not take effect until the first premium hereunder is paid, provided that unless such premium is paid while the insured is in good health, the liability of the Company hereunder, if any, shall be limited to the return of any premiums hereunder that shall have been paid". The initial monthly premium specified in the policy was $5.21. It was never paid.

The Wards made payment to the Savings and Loan Association on July 2, 1955, of $28.91 on the "loan account" and $3.05 for the "escrow account". The amount in the escrow account, on that date, including this payment, was $36.60.

Mr. Ward was taken ill on July 30 and died on August 1, 1955. At that time the policy was still in the possession of Mr. Robinson, who returned it to the insurance company on August 1, 1955.

On February 4, 1956, Mrs. Ward, as administratrix of her husband's estate, instituted this action against the insurance company and the savings and loan association, seeking to recover $3,419.75 actual damages (stated in the complaint as being $3,425.00, the initial amount of the loan, less $5.21, the amount of the initial monthly premium on the policy applied for), and $25,000.00 punitive damages, for alleged fraudulent breach of the undertaking on the part of both defendants to procure and put in force the policy in question, said breach being accompanied by alleged fraudulent acts of Robinson as their common agent: (1) in not notifying Ward that the policy had been written and was in Robinson's possession; and (2) in not paying the initial premium either from the escrow account or out of funds of the savings and loan association.

The separate answers of the defendants denied the inculpatory allegations of the complaint and alleged; that the savings and loan association had never exercised its right to procure insurance on Ward's life; that the application for the policy had been the voluntary act of Ward himself; that the policy had been received by Robinson on or about July 12 or 13, having been sent to him by the insurance company for delivery to Ward upon payment of the initial monthly premium, which payment was never made; and that the policy had never been delivered and was never in force.

The facts as before narrated were covered in Mrs. Ward's tstimony. The only other witness offered in her behalf was Mr. LeRoy Sellars, who testified that he was the secretary and loan officer of the First Federal Savings and Loan Association of Spartanburg, S. C., and was also licensed by Liberty Life Insurance Company to write decreasing term policies for the insurance of loans. The remainder of Mr. Sellars' testimony was, upon objection by defendants' counsel, excluded as incompetent. It was to the following effect: that in the form of loan note used by First Federal Savings and Loan Association there is a provision, relating to insurance upon the life of the borrower, identical with that hereinbefore quoted from the note in the case at bar; that applications for such insurance, naming First Federal Savings and Loan Association as beneficiary, are taken by him as agent of Liberty Life Insurance Company; that when such a policy has been issued it is delivered to him, and thereupon his stenographer writes a form letter to the insured advising of such delivery, and of the amount of the yearly premium, which has been charged to the insured's loan account so that his monthly payments on the loan will be increased accordingly; and that the policy is filed by the First Federal Savings and Loan Association with the other papers relating to the loan.

We think that there was no error in the exclusion of the proffered testimony of Mr. Sellars. The custom of First Federal Savings and Loan Association in its handling of decreasing term policies on the lives of its borrowers was not competent evidence of liability of the defendant Greer Federal Savings and Loan Association in the instant case. Those transactions were *res inter alios acta.* Cf. *Chapman v. Metropolitan Life Insurance Co.,* 172 S. C. 250, 173 S. E. 801. Had there been offered evidence of custom on the part of Greer Federal Savings and Loan Association in handling with its borrowers transactions similar to the one here involved, a different question would have been presented. But the witness, when asked whether such transactions were

handled in like fashion by savings and loan associations other than his own, answered frankly that he did not know.

In the course of her direct examination, Mrs. Ward ▉▉ was asked whether or not Mr. Ward, on the afternoon of the day when he was taken ill (Saturday, July 30), had gone from their home in Lyman, S. C., to the nearby town of Greer; to which she replied in the affirmative. She was then asked: "Did you later find out that among other things he did was to pay some bills in Greer?" Thereupon objection, on the ground of irrelevancy, was sustained; and this ruling of the trial judge is challenged here. It appears, from the colloquy following the objection, that the defendants had notified the plaintiff to produce at the trial the original of a notice that allegedly had been sent to Mr. Ward advising him of the issuance of the policy and requesting payment of the premium; that the plaintiff denied that such notice had been received by her or by her husband; and that her counsel's contention was that the testimony thus sought to be elicited from her, showing Mr. Ward's payment that day, in the small town of Greer, of other bills, but not that for the premium on the policy, was indicative of the fact that he did not know that he owed the latter, and was thus relevant to the issue of whether or not he had received notice of it. We find no error in the trial judge's ruling. The line of testimony to which the question was directed was, as he put it, "a little far afield". Determination of the relevancy of proffered testimony is largely within the discretion of the trial judge, *Neal v. Clark,* 199 S. C. 316, 19 S. E. (2d) 473.

In her remaining exceptions appellant charges that "it was error on the part of the court to grant the nonsuit essentially on the ground that in the absence of an authorization to pay the first premium there was no breach of a legal duty to pay the same", because the evidence raised the factual issue "as to whether or not the defendants exercised the care and diligence that the undertaking to obtain a policy required, and, if not, did the acts and omissions amount to

fraud", in that Robinson, as an officer of one defendant and agent of another:

(a) Stood in a fiduciary relationship to Ward;

(b) Had the right, and was under the legal duty, as secretary-treasurer of the defendant savings and loan association, to pay the first premium out of the funds in Ward's escrow account;

(c) Was under legal duty to notify Ward of the delivery of the policy and of the necessity of his paying the premium; and

(d) By his conduct estopped both defendants from claiming that payment by Ward of the first premium was necessary to put the policy in force.

In approaching the issues thus sought to be raised it must be borne in mind that we are not concerned with whether or not the circumstances disclosed by the testimony on the part of the plaintiff would have supported a finding of liability on the part of Robinson personally. He is not a party to the cause. It must be remembered, too, that under the theory of plaintiff's case, liability on the part of either defendant must be supported by evidence of fraud accompanying breach of an undertaking to procure and put in force the policy of life insurance for which Ward had applied.

Ward's note to Greer Federal Savings and Loan Association imposed no obligation upon the association to take out, or even to require him to take out, insurance upon his life for its benefit. The provision with reference to such insurance was solely for the benefit of the association, giving to it the right, if and when it should deem it necessary for the protection of the loan, to require Ward to take out such insurance, and, if the premiums on it were not paid by him or by someone else for him, to pay them itself and charge to Ward, as part of the principal of the loan, the amounts so paid. That provision gave Ward no right to require the savings and loan association to take out such insurance upon his life, or to pay the premiums on any such insurance that

he himself might procure. Nor is there any evidence in the case from which it may reasonably be inferred that the association required or desired the policy in question. On the contrary, it is undisputed that at the time when Ward made application for the policy the loan had been current for more than ten months, during which the monthly payments had been promptly met; and there is nothing to suggest that the lender was not content with the security of the mortgage. In our opinion the evidence warrants no reasonable inference other than that, in handling Ward's application for the policy in question, Robinson was acting as agent for the insurance company, not the savings and loan association, and that there was, at that time, no undertaking on the latter's part either to procure the policy or to pay the premium on it if and when it should be issued.

In his written application for the policy, Ward expressly agreed that the insurance company should have no liability thereunder "unless during my lifetime and good health a policy is issued by the Company, received by me, and the full first premium paid thereon". It is undisputed that the policy was never received by him, and that no premium was ever paid.

Nothing in the evidence warrants conclusion of liability on the part of either defendant based upon any act of Robinson up to and including his handling of Ward's application for the policy. Such liability must, then, be predicated upon evidence of some act or omission on the part of Robinson, after his receipt of the policy, whereby: (1) the defendants, or either of them, were estopped to deny that the policy was in force at the time of Ward's death; or (2) a fraud was perpetrated upon Ward or upon the appellant.

We do not agree with appellant in her contention that, since the funds in the escrow account were for the purpose of paying "taxes and insurance" premiums, Robinson as secretary-treasurer of the savings and loan association had the right to pay from that account the first premium on the policy of insurance on Ward's life. The evidence warrants

no such interpretation of the word "insurance". On the contrary, it is manifest that the insurance contemplated was insurance of the mortgaged property, not the mortgagor's life, for the monthly payments into the escrow account were fixed at its inception, and remained unchanged, at $3.05, whereas the monthly premium on the policy of life insurance alone would have been $5.21. Nor is there merit in the suggestion that funds paid by Ward into the "loan account" (*i. e.,* the monthly payments of $28.91) were applicable to the payment of the life insurance premiums, for by the express terms of the note these instalments were to be applied each month to the payment of interest and to reduction of principal of that obligation.

Assuming, as we must, that Ward was not notified that the policy had been received by Robinson and that the first premium would have to be paid in order to put it in force, appellant's case rests, in effect, upon the failure to give such notice. But that omission alone cannot support her claim of estoppel. In *Moore v. Palmetto State Life Insurance Co.,* 222 S. C. 492, 73 S. E. (2d) 688, it was held that where application for the policy had been made, and the premium paid therewith three months before the death of the insured, during which period evasive and misleading replies had been given by the agent to repeated inquiries as to the status of the application, whereby the applicant had been led to believe that the policy had been or would be issued, whether or not such conduct on the part of the agent estopped the insurer to assert that there was no contract of insurance was properly submitted to the jury. Unreasonable delay by the insurer's agent in effecting delivery of the policy, just as such delay on the part of the insurer in acting upon an application, may, if accompanied by circumstances such as retention of the premium, misleading representations relied upon by the applicant, and the like, estop the insurer to deny that the policy is in force. But no such circumstances appear here. Ward knew that receipt by him of the policy, and payment of the first premium, were

required to put the policy in force. There is no evidence of his reliance upon any agreement with either defendant that notice of its receipt by Robinson would be given him. There is no evidence that he was misled by the conduct, representations or silence of either defendant, or that he himself ever made inquiry as to the status of his application. Essential elements of estoppel are lacking. *In re Estate of Nettles,* 231 S. C. 214, 97 S. E. (2d) 897.

It seems equally clear that appellant's claim of fraud is without support in the evidence. Assuming an agreement, express or implied, between either or both of the respondents and Ward, that upon receipt of the policy Robinson would with reasonable promptness notify him of that fact and make demand upon him for payment of the first premium, proof that such agreement had been breached, negligently or even deliberately, would not of itself be sufficient to support an allegation of fraudulent breach. *Holland v. Spartanburg Herald-Journal Co.,* 166 S. C. 454, 165 S. E. 203, 84 A. L. R. 1336; *Kirby v. Gulf Oil Corp.,* 230 S. C. 11, 94 S. E. (2d) 21; *Roberts v. Fore,* 231 S. C. 311, 98 S. E. (2d) 766. The material elements of actionable fraud, *Tallevast v. Herzog,* 225 S. C. 563, 83 S. E. (2d) 204, cannot reasonably be inferred from the evidence here.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.